[Civ. No. 18172.   Second Dist., Div. Three.   Feb. 8, 1952.]

KENNETH H. FINDLEY et al., Appellants, v. J. C. GARRETT et al., Respondents.

Kenneth N. Dellamater and Ivan G. McDaniel for Appellants.

Gibson, Dunn & Crutcher, Homer D. Crotty, Herbert F. Sturdy and Samuel O. Pruitt, Jr., O'Melveny & Myers, Jackson W. Chance, Graham L. Sterling, Jr., Philip F. Westbrook, Jr., Frederick E. Hines, John A. Dundas, Louis Lieber, Jr., Guthrie, Darling & Shattuck, Milo V. Olson, Morrow & Morrow, Hubert T. Morrow and Leonard M. Comegys for Respondents.

WOOD (Parker), J.—In this stockholders' derivative action, plaintiffs appeal from a judgment of dismissal which was entered upon an order sustaining a demurrer to the first amended complaint without leave to amend.

All the allegations of that complaint are upon information and belief, except the allegations in three of the paragraphs hereinafter set forth wherein it is stated that the allegations are not upon information and belief.

It is alleged in said amended complaint as follows:

Douglas Aircraft Company was incorporated in 1928, under

the laws of Delaware, for the purposes of manufacturing and dealing in airplanes; acting as agent in dealing in aircraft manufactured by others; and obtaining and granting licenses with respect to manufacturing under and selling inventions, patents, and trademarks. The Garrett Corporation, formerly known under other names, was incorporated in May, 1936, under the laws of California, for the purposes of manufacturing and acquiring aircraft parts, inventions, patents, licenses, and reselling and leasing same to Douglas Aircraft and other aircraft companies; acting as selling agent and distributor for various manufacturers in the sale or lease of aircraft parts, inventions and patents to Douglas Aircraft and other aircraft companies; and inventing, patenting and producing aircraft parts, and reselling and leasing same to Douglas Aircraft and other aircraft companies.

(Allegations of this paragraph are not upon information and belief.) Plaintiff Findley is, and has been since April 13, 1948, a stockholder in Douglas Aircraft Company (referred to as Douglas); and plaintiff Cohen is, and has been since July 12, 1935, a stockholder in said company.

From May, 1936, to October, 1939, the Garrett Corporation (referred to as Garrett) was promoted and organized in furtherance of a fraudulent scheme and conspiracy entered into by defendants J. C. Garrett, Northrop, Jay, Elliott, Bertrandias, Raymond, Doak, Larner and Conant, and by Mr. Wetzel and Mr. Cover, all of whom were officers, directors or executives of Douglas and of its subsidiary, Northrop Corporation. Defendants Leigh, Smith and Barlow, who were friends of some of said last-mentioned defendants, were associated with them in promoting Garrett and they had knowledge, from 1936 to the date of filing the amended complaint, of the fiduciary obligations of all said directors or executives of Douglas. Said conspiracy was made effective in the following manner: defendant organizers of Garrett have had control of Garrett from 1936 to date by reason of their ownership of a majority of its stock; seven of said defendants (organizers) continued as directors of Douglas; four of said defendants (organizers) discontinued as directors of Douglas and became directors of Garrett; and all those eleven defendants (organizers) joined with three other defendants (not directors of Douglas) who became directors of Garrett. The net total profits received by said individual defendants as dividends and by increase in value of Garrett stock is in excess of $7,500,000. The purpose of the conspiracy was to

profit at the expense of Douglas through the medium of Garrett. Each person who became a director of Douglas after 1936 did so with full knowledge of the conspiracy and participated in the acts committed pursuant thereto.

From May, 1936, to date Garrett committed acts as follows: purchased, invented, and acquired aircraft parts, inventions, patents, and licenses, and resold them to Douglas; acted as selling agent and distributor for various manufacturers in the sale of aircraft parts, inventions, patents, and licenses to Douglas and other aircraft companies; obtained numerous patents on aircraft parts and many of those patents were developed by Douglas at considerable cost; utilized the goodwill and credit rating of Douglas to establish the source of supply of aircraft equipment in which Garrett dealt; obtained large purchase orders from Douglas for future delivery and obtained large cash advances thereon; used said large orders to obtain credit and financing for Garrett; competed with Douglas for the purchase and sale of aircraft parts (1) by entering into exclusive contracts with third parties whereby those parties discontinued direct sales to Douglas, (2) by using their influence as directors of Douglas to prevent Douglas from buying supplies and entering into business in competition with Garrett, (3) by using their influence to obtain confidential plans and research information of Douglas, (4) by so controlling the supply of aircraft parts as to make Douglas dependent upon Garrett, (5) by establishing large research facilities, pertaining to inventions and patents, similar to those of Douglas, and (6) by inducing research employees of Douglas to accept employment with Garrett.

The said acts constituted a violation of defendants' fiduciary duties to Douglas because Garrett's profits were derived by interfering with Douglas transactions, selling products to Douglas at secret and unconscionable profits, exploiting the normal business and the experimental research and inventions of Douglas. The secret profits which were distributed through Garrett to directors of Douglas and other aircraft companies destroy competition, violate the Fair Trade Practices Act, and are fraudulent as to Douglas and its stockholders.

The total sales by Garrett to Douglas from 1936 through 1948 amounted to approximately $25,000,000, and Garrett received substantial commissions thereon.

Plaintiffs and the other stockholders of Douglas did not learn of said acts until 1948 because the acts were of a self-concealing nature in that: the information disclosing the

organization of Garrett, and disclosing the names of its promoters and directors, was recorded in the books of Garrett which were not available to Douglas or its stockholders; the facts causing suspicion with respect to said acts are not disclosed in the books of account or the minutes of the board of directors of Douglas.

The plaintiffs or the stockholders of Douglas or Douglas had no knowledge, and are not chargeable with knowledge, of said acts prior to plaintiff Findley's discovery thereof in 1948 for the following reasons: (1) that from 1936 continuously to the date hereof all the directors of Douglas consented to, acquiesced in, and became active participants in all of said acts (alleged acts of conspiracy) of said defendants, and throughout said years to the date hereof said directors knowingly shielded and actively concealed said acts from the stockholders of Douglas by means of affirmative representations which purported to be full disclosures of material facts relating to the affairs of Douglas, but said representations were in fact fraudulent concealments of material facts accomplished by omissions and by statements of partial truths which indicated that the affairs of Douglas were being conducted with normal prudence and due regard to the obligations of the directors; (2) said directors also concealed from all the stockholders of Douglas (a) that in April, 1941, in connection with government contracts, the War Department admonished defendant Donald W. Douglas, the president of Douglas Aircraft, to fulfill his responsibilites regarding the ownership of Garrett stock by the defendant directors of Douglas Aircraft; and (b) that in March, 1941, the defendant directors of Douglas who organized Garrett were offered more than nine times the consideration they paid for their Garrett stock but they refused to dispose of said stock; (3) from 1936 to April, 1943, in annual proxy statements and in annual reports to the stockholders of Douglas, the directors of Douglas concealed that any of the directors or executives of Douglas had any financial interest in Garrett; (4) from April, 1943, to March, 1947, said directors, by statements of partial truths in proxy statements and annual reports to the stockholders of Douglas, represented that no director of Douglas had any financial interest in Garrett prior to "fiscal year" 1942; (5) in April, 1941, defendant Donald W. Douglas, as president of Douglas Aircraft, by omissions and statements in a letter to the War Department, concealed the facts which were alleged in the amended complaint as acts of conspiracy;

(6) the said concealments diverted any suspicions of fraud, prevented investigation by the stockholders and lulled them into a false sense of security; (7) the defendant directors of Douglas occupied a fiduciary relationship toward Douglas and its stockholders, and plaintiffs imposed confidence in said directors and relied upon their integrity and had no cause to suspect the violation of said relationship or to suspect the activities of the other defendants who acted jointly with the directors; (8) the said directors of Douglas by actively concealing said facts did thereby, from 1936 to the date hereof, continuously violate their fiduciary obligations to make full disclosures of all material facts to the stockholders, and by said violation the directors have become participants in all the fraudulent acts alleged in the amended complaint; (9) the defendants committed said acts secretly in order to avoid redress; (10) the said acts of which plaintiffs complain were a part of a fraudulent plan and conspiracy which consisted of a continuous series of acts beginning in 1936 and continuing to the date hereof.

(Allegations of this paragraph are not upon information and belief.) Prior to April 13, 1948, when plaintiff Findley became a stockholder of Douglas, he had no interest in Douglas and he did not make any inquiry concerning Douglas; he discovered the wrongs, alleged in the amended complaint, about May, 1948, as the result of a casual conversation with a friend who informed him that Garrett was organized and owned by directors of Douglas and their associates; and he caused investigation to be made by an attorney who obtained information from the Corporation Commissioner, the patent office, and financial records.

Plaintiff Cohen first learned of the alleged acts of defendants in September, 1948, when he read, in the Wall Street Journal of September 25, 1948, an article summarizing the Findley suit. (In the original complaint, Findley alone was suing on behalf of the stockholders.) Prior thereto plaintiff Cohen imposed confidence in the directors of Douglas and relied upon their integrity, and he had no cause to suspect the violations of the fiduciary obligations of defendant directors of Douglas or to suspect the activities of the other defendants in conspiring with said directors. Plaintiffs and the other stockholders of Douglas could not have discovered the said acts prior to May, 1948, because the acts were of a self-concealing nature and were actively concealed by the individual defendants.

(Allegations of this paragraph are not upon information and belief.) About June 3, 1948, plaintiff Findley sent a letter to the board of directors of Douglas stating "the substance of his discovery," and in that letter he demanded that appropriate legal action be taken to recover on behalf of Douglas all the profits which the participants in the acts had acquired in violation of the rights of Douglas and its stockholders. About August 19, 1948, plaintiff Findley was advised by letter from Douglas that its board of directors declined to take action in the matter.

Each of the present directors of Douglas "has long had" full knowledge of the wrongs alleged in the amended complaint and has refused in bad faith to seek redress. All the present directors of Douglas have from time to time participated in, acquiesced in and consented to some or all the wrongs alleged in the amended complaint, and by reason thereof have furthered the business of Garrett. Demand upon the stockholders of Douglas would be futile because the management of Douglas is in its board of directors; the stock of Douglas is dispersed among more than 9,000 holders throughout the United States and in foreign countries; and many shares of the stock are traded every day on several stock exchanges.

In the prayer the plaintiffs asked that said defendants account to Douglas Aircraft for the profits derived through the wrongs alleged; that a trust be impressed in favor of Douglas Aircraft upon the Garrett stock owned by the individual defendants.

(Exhibits attached to the amended complaint show the names of the persons who were directors and officers of Douglas from 1936 to date, the period of time each person was such director or officer and the position which each one held. Those exhibits also show the names of the organizers of Garrett, the positions each organizer held in Douglas and Garrett, the number of shares each one held in Garrett in 1939, and the amount of dividends he probably received from 1937 to 1949; and that in 1939 said organizers owned 85 per cent of the stock of Garrett. Those exhibits also show the names of the officers and directors of Douglas who were also officers and directors of Garrett, the period of time each person was such officer or director of Garrett and the position which each one held. The exhibits show that defendant Elliott was a director and the general counsel of Douglas from 1936 to 1947, and he was secretary of Garrett from 1936 to 1940, and general counsel

of Garrett from 1936 to 1948; defendant Raymond was a vice-president and director of Douglas from 1936 to date, and he was a director of Garrett in 1939 and 1940; defendant Northrop was a director of Douglas in 1936 and 1937, and he was treasurer of Garrett in 1939 and 1940; that Mr. Wetzel (not a defendant) was senior vice-president, general manager, and director of Douglas from 1936 to 1938, and he was director of Garrett from 1936 to 1938; defendant Garrett was the purchasing agent of Northrop Corporation (subsidiary of Douglas) in 1936, and he was president of Garrett from 1936 to date; Mr. Cover (not a defendant) was executive vice-president and director of Douglas from 1936 to 1943 but was not a director of Garrett; defendant Conant was a director of Douglas from 1940 to date but was not a director of Garrett; defendant Bertrandias was vice-president of Douglas in 1939 and 1940 and from 1945 to date, but was not a director of Garrett.)

Defendants demurred to the amended complaint upon the grounds: (1) It does not state facts sufficient to constitute a cause of action; (2) it is barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure; (3) that plaintiff Findley has no legal capacity to sue in that the said alleged transactions purportedly occurred prior to the date he acquired Douglas stock; (4) that the amended complaint is uncertain. (Several specifications of uncertainty were set forth in the demurrer.)

It appears that, from 1936 to the commencement of the action, the number of members of the board of directors of Douglas varied from 13 to 17. The amended complaint shows that 11 persons who were officers, directors or executives of Douglas and three other persons (not officers of Douglas) promoted and organized Garrett in 1936. Six of those organizers were, at times during said period from 1936 to commencement of the action, directors of Douglas, and during said period no more than five of said organizers of Garrett were directors of Douglas at any one time. Four of said organizers were directors of Douglas from 1940 to June, 1943. Three of them were such directors from June, 1943, to 1946. Two of them were such directors after 1946. None of the directors of Douglas, other than those who were organizers of Garrett, owned stock or held any position in Garrett. It thus appears that the directors of Douglas who owned stock in Garrett and who allegedly profited from the alleged wrongs did not at any time constitute a majority of the board of di-

174

rectors of Douglas. In other words, at all times from 1936, the majority of the members of the board of directors of Douglas did not own stock in Garrett.

According to the amended complaint, the directors of Douglas who did not own stock in Garrett, and who always constituted a majority of the board of directors of Douglas, had knowledge that, beginning in 1936, the organizers of Garrett had committed alleged wrongful acts against the Douglas Corporation. Although there were several changes in the personnel of the board of directors of Douglas after 1936, and although the board of directors, as variously constituted after 1936 had knowledge of the alleged wrongs, the board did not seek redress. ▉ The power to manage the affairs of a corporation is vested in the board of directors. (*Scott* v. *Los Angeles Mountain Park Co.*, 92 Cal.App. 258, 264 [267 P. 914].) ▉ Where a board of directors, in refusing to commence an action to redress an alleged wrong against a corporation, acts in good faith within the scope of its discretionary power and reasonably believes its refusal to commence the action is good business judgment in the best interest of the corporation, a stockholder is not authorized to interfere with such discretion by commencing the action. (See *Fornaseri* v. *Cosmosart Realty & Bldg. Corp.*, 96 Cal. App. 549, 557 [274 P. 597].) In the case last cited it was said at page 557: "[C]onduct of directors in the management of the affairs of a corporation is not subject to attack by minority stockholders . . . where such acts are discretionary and are performed in good faith, reasonably believing them to be for the best interest of the corporation." Also, on said page, it was said: "Good business judgment would seem to recommend the safe and sure plan which was adopted by the directors. . . . At least the transaction appears to be a discretionary matter, and if so, affords a stockholder no authority to challenge it in this equitable action. Every presumption is in favor of the good faith of the directors. Interference with such discretion is not warranted in doubtful cases." In *McCloskey* v. *Snowden*, 212 Pa. 249 [61 A. 796, 797], which was an action by stockholders to recover promoters' profits, there were nine members of the board of directors, and one of them was a defendant charged with taking wrongful profits and three of them allegedly had business connections with some of the promoters. The court therein said at page 253: " '. . . the refusal by the corporate management must

appear affirmatively to be a disregard of duty and not an error of judgment; a nonperformance of a manifest official obligation amounting to a breach of trust.' '' In *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630 [15 S.W. 448, 449, 450, 24 Am. St. Rep. 625], which was an action by stockholders against former directors for breach of trust, the court said at page 636: ''A very wide discretion is necessarily reposed in the directors of a corporation. It is not the duty of the managers of such associations to bring suit upon every supposed wrong or injury to the corporation. If it were so strangers could never know when a settlement, compromise, or adjustment was a finality. . . . So a suit might appear so desperate, or be so expensive, or, for good reasons, impolitic, that directors might, in the exercise of a sound discretion, deem it unwise to engage in litigation. In such case, if the refusal be in good faith, the Courts will rarely suffer a share-holder to overturn such decision by entertaining his suit for the same cause of action. To authorize his suit, the refusal of the corporation to sue must appear to have been wrongful.''

Appellants (plaintiffs) contend, however, that the directors of Douglas in refusing to sue did not act in good faith, that the transactions complained of involved divided loyalty, breach of trust, fraud, and fraudulent concealment by corporation fiduciaries; that such matters are not within the discretionary powers of the board of directors; and that the board may not ratify a fraud. The allegations of the amended complaint, with respect to the directors or officers of Douglas who did not own stock in Garrett, are that each person who became a director or officer of Douglas after 1936 did so with full knowledge of the conspiracy and thereafter participated in the acts committed pursuant thereto; that continuously from 1936 to date all the directors of Douglas ''became active participants'' in said alleged acts of conspiracy of said organizers of Garrett and ''knowingly shielded'' and ''actively concealed'' said acts from the stockholders of Douglas by ''affirmative representations'' which were ''fraudulent concealments'' of material facts accomplished by omissions and by statements of partial truths; and that the present directors refused in bad faith to seek redress.

In the original complaint, stockholder Findley was the only plaintiff, and the only directors of Douglas who were defendants were those who were organizers and stockholders of Garrett. In that complaint it was alleged that the acts

complained of "were concealed and kept secret from all persons and corporations, including defendant Douglas Aircraft, its directors and stockholders, and said facts are still concealed and kept secret." In other words, in that complaint directors of Douglas who had no financial interest in Garrett were not implicated in any alleged wrongful acts. A demurrer to that complaint was sustained. One of defendants' arguments in support of that demurrer was that under that complaint an independent majority of the Douglas board, being unassociated with the alleged wrong, had refused to commence the action. In the amended complaint, under consideration here, nine other persons, who had been at some time after 1936 directors of Douglas, were included as defendants. The exhibits attached to the amended complaint show that those additional defendants never owned any stock or held any position in Garrett. If the nine additional directors of Douglas were implicated in the wrongs allegedly committed by the organizers of Garrett, then it could not be said that a majority of the Douglas board, independent and disinterested in Garrett, had refused to commence the action. In other words, under those circumstances, it might be argued, as it is argued here, that a majority of the Douglas board was under disability and powerless to act with respect to the alleged wrongs because a majority of the board was "accused of participation in the fraud." The above-mentioned allegations to the effect that the said nine additional directors of Douglas became directors of Douglas with full knowledge of the conspiracy of the organizers of Garrett and "participated" in the acts committed pursuant to the conspiracy, "became active participants" in the acts of conspiracy, and "knowingly shielded" and "actively concealed" said acts of conspiracy by "affirmative representations" which were "fraudulent concealments" of material facts, and that the directors refused "in bad faith" to seek redress, are general statements which are not supported by allegations of specific facts. Those general allegations are made upon information and belief and are intended to implicate the said additional nine directors in an alleged fraud and conspiracy, which fraud and conspiracy are also alleged upon information and belief. In other words, it appears that plaintiffs have attempted to charge the said additional directors with fraud and conspiracy upon information and belief and have not alleged any fact upon which the charge of fraud or conspiracy is based or upon which the belief is based. In *Dowling*

v. *Spring Valley Water Co.*, 174 Cal. 218, it was said at page 221 [162 P. 894] : "[I]t is not sufficient to allege fraud or its elements upon information and belief, unless the facts upon which the belief is founded are stated in the pleading." The general charges of fraud, conspiracy and bad faith are insufficient to overcome the presumption that the 1948 board of directors (upon whom the demand was made) acted independently and honestly in declining to prosecute the claims in question against the defendants. Those general statements regarding participation, shielding, concealment, and bad faith by the additional nine directors, who had no stock in Garrett, are not sufficient to implicate said additional directors in the wrong allegedly committed by the organizers of Garrett. It appears, therefore, under the allegations of the amended complaint, that at all times after 1936 a majority of the board of directors of Douglas was independent and was not under disability or powerless to act with respect to the alleged wrong. There were 13 members of the Douglas board when plaintiff Findley made his demand that legal action be taken, and 11 of them were independent of Garrett and two were Garrett organizers and stockholders. The matter was within the discretionary power of the board. An independent majority of the board, in the determination of a discretionary matter, declined to commence an action. Notwithstanding the insufficiency of the allegations of fraud and bad faith, it was necessary for the court to consider whether, on the facts alleged, the refusal of the directors to prosecute the claims was so clearly against the interests of the corporation that it must be concluded that the decision of the directors did not represent their honest and independent judgment. The facts alleged would not have justified such a conclusion. It was a question of business whether the transactions over a 12-year period should be investigated and prosecuted. ■ Directors have the same discretion with respect to the prosecution of claims on behalf of the corporation as they have in other business matters. In this respect the fact that a claim may be founded in fraud does not differentiate it from other claims. ■ Refusal to sue on a fraud claim is not, as plaintiffs contend, a ratification of fraud. ■ The mere fact that a recovery for the corporation would probably result from litigation does not require that an action be commenced to enforce the claim. Even if it appeared to the directors of Douglas that at the end of protracted litigation substantial sums could

be recovered from some or all of the defendants, that fact alone would not have made it the duty of the directors to authorize the commencement of an action. It would have made it their duty to weigh the advantages of a probable recovery against the cost in money, time and disruption of the business of the company which litigation would entail. It appears from the nature of the litigation, the variety and complexity of the issues, the period of time during which the asserted frauds allegedly were committed, the multitude of transactions between the two corporations, the many individuals involved, and the questions of accounting, that the directors were confronted with litigation of formidable proportions. Many directors, other than those named as defendants herein, were also accused in general terms of conspiracy and fraud. ■ A mistake of judgment on the part of a board of directors does not justify taking the control of corporate affairs from the board of directors and placing it with the stockholders. The board of directors may make incorrect decisions, as well as correct ones, so long as it is faithful to the corporation and uses its best business judgment.

It appears from letters sent by the 1948 board of directors to Findley regarding his demand, and from minutes of the directors' meeting, that the 1948 board of directors gave consideration to Findley's demand, and that the board acted under legal advice. Copies of several documents were attached to the demurrer, and it was stipulated that the trial court might consider them. Those copies included the demand made by Findley,[1] the letter from the directors in reply thereto,[2] another letter from the directors to Findley's counsel,[3] minutes of the directors' meeting,[4] and another letter from the directors to Findley's counsel.[5] As above indicated, the great majority of the 1948 board of directors had no interest in Garrett. The board was aware of the dual position and conflicting duties of those individuals who were or had been directors of both corporations, and it was aware of the magnitude of the purchases made by Douglas from Garrett over a period of 12 years. There was no manifest breach of duty in its decision not to commence an action. The board exercised its business judgment. Under such circumstances, a stockholder may not usurp the discretionary powers of the managers of the corporation by commencing a derivative action. If, under such circumstances, the court

---

[1]See footnotes 1 to 5 at end of opinion.

should entertain such an action it would be substituting its own business judgment for that of the directors. The determination of the matter by the board of directors is a bar to the action herein.

Respondents contend also (1) that the purported cause of action is barred by the statute of limitations; (2) that plaintiffs do not have standing to commence or maintain the action; (3) that plaintiffs did not make a genuine demand upon the board of directors. By reason of the above conclusion herein, it is not necessary to discuss these contentions.

The trial court did not abuse its discretion in not granting leave to amend. In the original complaint it was alleged upon information and belief that in furtherance of the fraudulent plan and conspiracy the organizers of Garrett acted secretly as to Douglas, its directors and stockholders. In the amended complaint it is alleged upon information and belief that each person who became a director of Douglas after 1936 did so with knowledge of the conspiracy. It thus appears that the allegations of the amended complaint directly contradict the allegations of the original complaint with respect to whether the directors of Douglas, other than those who were organizers of Garrett, had knowledge of the alleged conspiracy. No explanation, or purported explanation, is given in the amended complaint for the contradiction or complete change of theory with respect to the independent or nonprofiting directors. Plaintiff Findley, who owns two shares of stock, purchased them about two months before he made his alleged demand upon the board, and about four months before he filed the action. Plaintiff Cohen, who apparently has owned 25 shares of stock since 1935, joined Findley as a plaintiff in the amended complaint and, as above stated, he alleged upon information and belief when and how he discovered the alleged wrong. The demurrer to the original complaint was based upon defects in pleading which were similar to the defects in pleading in the amended complaint. Plaintiffs did not avail themselves of the opportunity to correct such defects after the first demurrer was sustained. It clearly appears that plaintiffs stated the facts upon which they rely as favorably to their contentions as was possible.

The trial court also granted defendants' motion to dismiss the action upon the ground that the purported cause of action in the amended complaint is a sham. By reason of the above conclusion in the matter of sustaining the demurrer

without leave to amend, it is not necessary to discuss this further ruling of the trial court.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied February 29, 1952, and appellants' petition for a hearing by the Supreme Court was denied April 3, 1952. Carter, J., was of the opinion that the petition should be granted.

---

[1]Demand of June 3, 1948, by Findley:

''Board of Directors   Douglas Aircraft Co. Inc.
3000 Ocean Park Boulevard   Santa Monica, California

''Gentlemen:

''Pursuant to instructions from my client, Kenneth H. Findley, an owner of capital stock in your corporation, I have investigated the facts and circumstances whereby certain officers, directors and associates (hereinafter referred to as 'said officers') of your corporation, and other persons not associated with your corporation, have jointly and secretly conceived and executed a fraudulent plan, scheme and conspiracy (hereinafter referred to as 'said fraudulent plan') in breach and violation of the inherent fiduciary duties and obligations of said officers to your corporation.

''The investigation reveals that some of said officers who (together with certain members of their families) conceived and/or participated in said fraudulent plan are as follows: J. C. Garrett, Harry H. Wetzel, deceased, Frederick W. Conant, John K. Northrop, Charles T. Leigh, Harry W. Elliott, Carl A. Cover, deceased, Philip G. Larner, Victor E. Bertrandias, A. E. Raymond, Henry E. Guerin, Edmund R. Doak, and Don P. Smith. Additional details concerning the inception and execution of said fraudulent plan and the extent of the individual benefits therefrom can be made available to you by the officers named above. The officers and directors of your corporation who did not actively participate in said fraudulent plan may or may not be jointly liable, depending on whether or not said fraudulent plan was secret as to them. If they did in fact know of the inception and operation of said fraudulent plan, and failed to take appropriate action, they would be liable for allowing the others to carry out said fraudulent plan without official opposition, unless they did in fact oppose it without avail.

''The plan as executed by said officers, who through their corporate duties had acquired knowledge of the indispensable requirements of your corporation, consists of the secret formation of The Garrett Corporation (formerly known as Aircraft Tool and Supply Company, and later as Garrett Supply Company) (hereinafter referred to as 'Garrett'), for the purpose of performing an integral part of the essential authorized, existing and normal business of your corporation, and in addition, selling services, supplies and products of other manufacturers to your corporation at a profit, which profit they secretly distributed among themselves. Your corporation had the facilities, fundamental knowledge, practical experience and ability to pursue such essential authorized, existing and normal business, and was in fact pursuing such business, namely, the designing, developing and constructing of products essential to the manufacture of aircraft, and extensive experimental research necessarily

connected with the manufacture of aircraft. The entire potential of Garrett was based upon the absolute and indispensable needs of your corporation and in the direct line of the business of your corporation.

"In furtherance of said fraudulent plan said officers caused impositions upon your corporation, and took advantage of their positions in that they exercised improper influence causing purchases to be made from Garrett, and hindered and obstructed the normal development of the legitimate business of your corporation, thus advancing their individual interests as distinguished from the interests of your corporation and its stockholders.

"The above operations of Garrett have been functioning from May 21, 1936 (date of incorporation of Aircraft Tool and Supply Company) to the present. During said period Garrett and said officers have made net profits of approximately $6,000,000.00 plus the waste of approximately $50,000,000.00 in improper selling and administrative expenses caused by unnecessary duplication of the existing adequate plants, personnel and facilities of your corporation.

"In addition, Garrett has acquired numerous patents which are indispensable to your corporation. Some of the inventions covered by said patents were obtained by Garrett through the means and knowledge of said officers as a result of their duties of trust with your corporation, and some of said inventions were the subject of experimental and development efforts by your corporation prior to or simultaneous with Garrett's similar endeavors. All of said patents were obtained by Garrett in direct competition with your corporation and to the injury of your corporation. There are in excess of 20 Garrett patents which include, among others, the following: oil cooler with protective and control means; electrical flap control; exhaust heat exchanger; thermostatic oil cooler control; temperature and pressure control; and an air-conditioner for aircraft cabins. Said patents have an aggregate commercial value of many millions of dollars, and in equity belong to your corporation, whose said officers conceived and executed said fraudulent plan for their individual advantage, without procuring any benefit or advantage whatsoever for your corporation or its stockholders.

"All the earnings, patents and other assets of said Garrett should have become the property of your corporation. All the benefits therefrom should be returned to your corporation. Past avails of said benefits should be accounted for to your corporation, and all future benefits made payable to your corporation. My client, therefore, demands that your corporation confirm the facts stated above, and for the purpose of re-covering all properties and benefits belonging to it, investigate such additional details and other factors as may be appropriate in connection with the foregoing, and institute appropriate legal action to compel recovery against all persons and corporations who have improperly benefited at the expense of your corporation and its stockholders.

"It is the firm intention of my client to pursue all legal steps necessary to recover for your corporation and its stockholders all properties, monies, and other benefits whatsoever, which in equity belong to them.

"Will you please give this demand your immediate attention, and advise me of the action which your corporation proposes to take in the premises, so that my client may be properly guided in the action which should be taken by him?

"Yours very truly,

"Kenneth N. Dellamater"

[2]Letter of June 17, 1948, to counsel for Findley:

"Your letter of June 3, 1948, addressed to the Board of Directors of

this company is acknowledged. Copies have been sent to the individual members of our Board.

"Your letter makes very serious charges. Doubtless you are aware of the very large volume of transactions in which this company has been engaged since the year 1936. Our files are voluminous and substantial parts of them are in storage. Thus a thorough investigation of them will be not only time consuming but very costly.

"In view of these facts, we ask that you furnish to this company all of the information at your disposal in order to enable the company to arrive at a conclusion as to what action it should take in the premises. In giving this information will you please be as specific as possible, giving names, dates, contracts and other information which may be available to you. Will you please list all of the patents that you claim should have been acquired by this company? Will you please also elaborate in detail on the charge that you have made with respect to improper selling and administrative expenses?

"We would appreciate receiving this from you at your early convenience."

[3]Letter of June 28, 1948:

"Your letter of June 18, 1948 in reply to ours of June 17 reflects a misunderstanding of our letter and fails to respond to our request for information upon which further action by this company might be based. Our purpose in stressing the time and cost involved in investigating broad and general charges of the sort made in your letter of June 3 covering activities over a period of twelve years was not, as you seem to understand, to alarm you. Rather, the company does not desire to undertake such a task if it can be avoided or made unnecessary by disclosure of more detailed pertinent information which you claim to have in your possession. Again a company investigation might not, even after several months of intensive effort and at great cost to the company, reveal for the company's consideration the precise information which you claim you have and upon which you base your charges.

"It therefore appears essential, in order for the Board of Directors to arrive at a conclusion, that you comply with the request for information made in our letter of June 17. Upon such compliance, we shall make such further investigation as may appear necessary in order for the Board to reach a decision on the matter."

[4]Excerpt from minutes of directors' meeting of August 18, 1948:

"Mr. Douglas then opened the discussion with respect to a stockholder's suit which is threatened by Mr. Kenneth Dellamater, attorney acting for Mr. Kenneth Findley, a stockholder of record who purchased two shares of stock on April 13, 1948. Mr. Douglas also informed the Board that Gibson, Dunn and Crutcher, attorneys in Los Angeles, will serve as consultants to our Legal Department. Mr. Hines pointed out that suit was to be brought with respect to the Garrett Corporation and the interest which certain directors and officers at Douglas had in such corporation from time to time in the past, as set forth in Mr. Dellamater's letter of June 3, 1948 and in subsequent correspondence. Copies of this letter had previously been sent to all members of the Board prior to this meeting. Mr. Hines then presented to the Board a proposed letter to be sent to Mr. Dellamater on behalf of the Board. After some discussion the following resolution was proposed by Geoffrey Mayo, seconded by Milo Bekins, and upon being put to a vote was unanimously passed:

"RESOLVED, That the proposed letter to Mr. Dellamater in the form submitted be approved and that the President be authorized to execute such letter.

"BE IT FURTHER RESOLVED, That a copy of the proposed letter be

marked by the Secretary for identification and retained in the corporate records.''

⁵Letter of August 18, 1948:

''Reference is made to your letter of June 3, 1948 addressed to the Board of Directors of this company, to the company's letter to you dated June 17, 1948, to your reply dated June 18, 1948 and to the company's reply thereto dated June 28, 1948. Your letter of June 3 makes charges of fraud on the part of certain individuals named therein. It demands that this company confirm the allegations made by you, that this company make further investigation and that it bring suit against 'all persons and corporations which have improperly benefited at the expense of' this company and its stockholders.

''This company has investigated, to the extent that it has been able to do so in the time elapsed, the very broad charges made in your letter. The Board of Directors of the company has considered the matter and has directed that this reply be made.

''We are unable to confirm your allegations. The organization of Aircraft Tool and Supply Company (later the Garrett Corporation) in 1936 was not secret or concealed in any manner. So far as we are informed that company was not 'organized for the purpose of performing an integral part of the essential authorized existing and normal business'. The Garrett Corporation acted as a manufacturer's agent and jobber for various materials and supplies, chiefly for the aircraft industry. This was a business which Douglas did not carry on and could not carry on. We know of no instance where improper influence was exercised to cause purchases to be made from Garrett or where the existence or operation of Garrett was of disadvantage to this company. On the whole it is our belief that substantial savings resulted to this company on account of its dealings with Garrett. We know of no instance where Garrett obtained inventions or patents through the means of or the knowledge of any officers or directors of this company. We have known that some of the individuals named in your letter of June 3 have owned stock in the Garrett Corporation. Such individuals were at no time in control of this company either through stock interest or by controlling the Board of Directors.

''Our letter of June 17 and June 28 requested that you furnish to this company any evidence you may have tending to prove the existence of fraud or wrongdoing. This you have failed and refused to do. In the event any fraud or wrongdoing did exist and this company has a cause of action against any individual or corporation, this company will consider it its duty to take appropriate action to recover any amounts of money or property to which the company may be legally entitled, and will do so. In the absence of evidence of such fraud or wrongdoing, the Board of Directors finds it impossible at the present time to make any further determination in the matter. The Board again demands that you produce any such evidence you may have so that if any cause of action exists, the company may prosecute it.''