[No. B051487. Second Dist., Div. Five. May 20, 1993.]

RODNEY B. SHIELDS, Plaintiff and Appellant, v.
HENRY E. SINGLETON et al., Defendants and Respondents.

**COUNSEL**

Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Alan Schulman, Kevin P. Roddy, Greenfield & Chimicles, Patrick J. Grannan and Richard D. Greenfield for Plaintiff and Appellant.

Irell & Manella, Gregory R. Smith, David Siegel, David I. Gindler, Daniel P. Lefler, Latham & Watkins, William J. Meeske, Brian C. Riopelle, Heller, Ehrman, White & McAuliffe, M. Laurence Popofsky, Miles N. Ruthberg, Pamela S. Palmer and Steven A. Blum for Defendants and Respondents.

**OPINION**

**ARMSTRONG, J.—**

*Introduction*

In this shareholder derivative action plaintiff Rodney B. Shields is suing on behalf of Teledyne, Inc. (the Company) to recover for the Company damages it allegedly suffered due to the unlawful activities of certain employees of a subsidiary of the Company. The defendants to this action may be divided into three groups: The directors of the Company (Henry E. Singleton [who is also chairman of the Company], George A. Roberts [who is the Company's president and chief executive officer], George Kozmetsky, Arthur Rock and Fayez Sarofim); the officers of the Company (Hudson B. Drake, William P. Rutledge, Jerrold V. Jerome, Leo W. Killen, Allen H. Orbuch, G. Williams Rutherford, Judith R. Nelson, and Gordon J. Bean); and certain individual employees and consultants of a subsidiary of the Company who are not parties to this appeal.

Plaintiff's claims are based on the federal government's wide-ranging investigation, known as Operation Ill Wind, of fraud and corruption in the procurement of military defense contracts, and the criminal and civil suits which resulted from that investigation. Teledyne Electronics, Inc., a division of Teledyne Industries, Inc., which is a subsidiary of the Company, was indicted in the scandal, as were several of its executives, including three defendants named in this action. No officer, director or employee of the Company was ever implicated in any criminal wrongdoing, and plaintiff makes no such claim in this suit. Rather, plaintiff contends that defendants intentionally or negligently breached their fiduciary duties to the Company by, in effect, failing to prevent the criminal acts of Teledyne Electronics employees, and are therefore liable to the Company for the damages it sustained, including criminal and civil penalties, settlement payments and legal fees, as well as loss of future business as a result of disqualification from bidding on government contracts. Plaintiff's second amended complaint, with which we are here concerned, also contains a claim that defendants violated the Racketeer Influenced and Corrupt Organizations Act.

The officer and director defendants demurred to the complaint on three occasions, each time claiming that (1) plaintiff failed to meet the prefiling

demand requirements of Corporations Code section 800,[1] and (2) the complaint failed to allege facts sufficient to state a cause of action against the demurring defendants. The trial court sustained each demurrer.

Plaintiff contends on appeal that he satisfied the prefiling requirements of section 800 by voluntarily posting a $50,000 bond pursuant to subdivision (e) of that section, and that, in any event, he properly alleged that demand on the board would have been futile and was therefore excused.

### The Complaint

The following facts are gleaned from the allegations of the complaint: The Company was incorporated in Delaware but maintains its principal place of business and conducts substantially all of its activities in California. The Company maintains numerous subsidiaries, of which it owns all or nearly all of the voting stock. Company revenues in 1988 were $3.5 billion, while the annual revenues of Teledyne Electronics are $75 million, virtually all of which are related to the defense industry.

The complaint alleges that George H. Kaub, Dale Schnittjer and Eugene R. Sullivan, each of whom was an employee of Teledyne Electronics, agreed to pay $160,000 to two consultants in order to obtain inside information from a civilian employee of the United States Navy, to aid Teledyne Electronics in obtaining defense procurement contracts. Specifically, Teledyne Electronics was awarded a $24 million Army contract, known as the AN/AMP 424 contract, for certain military combat equipment, which it would not have received but for the illegal bribes. With the exception of Mr. Schnittjer, each of the foregoing individuals, all of whom are named as defendants in this lawsuit, was convicted of federal criminal charges in connection with Operation Ill Wind.

The substance of plaintiff's claims against the director defendants are contained in the section of the complaint entitled "Allegations of Wrongdoing." There plaintiff alleges:

"[T]he Officer and Director Defendants have caused Teledyne to maintain an inadequate system of internal financial and accounting controls such that Teledyne's assets have not been reasonably safeguarded against misuse. Such conduct permitted (a) Defendants to cause Teledyne's and/or Teledyne Electronics' funds to be used to pay improper bribes or gratuities in violation of law; and (b) allowed Teledyne Electronics' employees to falsely certify

---

[1] All further statutory references are to the Corporations Code. For ease of reference, the whole of section 800 is set forth in the appendix to this opinion.

that no consultants were hired during the procurement of the AN/AMP contract. In connection with the wrongdoing alleged herein, these Defendants have caused and/or permitted their subordinates at Teledyne to make false and misleading and materially inaccurate entries in Teledyne's books and records to disguise the nature of financial payments the Company has made (which were, in fact, bribes or improper gratuities) and to pursue and obtain, by illegal means, inside information regarding the Government's funding for the AN/AMP 424 contract."

In addition, plaintiff alleges that all of the directors were "interested" in, and direct beneficiaries of, the underlying wrongdoing because they received compensation and awards which were based on the Company's consolidated earnings, which in turn were inflated by reason of the illegal defense procurement activities. These allegations are based upon the following facts: Three of the directors (Singleton, Kozmetsky and Sarofim) together own approximately 25 percent of the Company's shares; four of the directors (Singleton, Roberts, Rock and Sarofim) sit on the board of directors of Argonaut Group, Inc., while two of these (Singleton and Roberts) are members of the board of directors of United Insurance. Rock and Sarofim are members of the Audit Committee of the Company's board of directors, which "reviews the scope of the audit and nonaudit assignments and the related fees, the accounting principles applied by the Company in financial reporting, the scope of internal auditing procedures and the adequacy of internal controls," and Singleton, Roberts and Rock are members of the board's Executive Committee, which "[e]xcept for certain powers which may be exercised only by the full Board of Directors, . . . may exercise all powers and authority of the Board of Directors in the management of the business of the Company." The directors each receive $12,000 per year in director's fees, and members of the Audit and Executive Committee receive an additional $12,000 annually.

*Procedural Summary*

Pursuant to the terms of section 800,[2] in order for a shareholder to bring a derivative suit on behalf of the corporation, he must allege "with particularity" either (1) that he made a demand on the board of directors, which the

---

[2]The code section in pertinent part reads as follows:

"(b) No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . of the corporation unless both of the following conditions exist:

"(1) The plaintiff alleges in the complaint that plaintiff was a shareholder . . . at the time of the transaction or any part thereof of which plaintiff complains . . . ; and

"(2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, . . . ." (§ 800, subd. (b).)

board wrongfully refused, or (2) that such a demand would have been futile. Plaintiff's counsel sent a letter, dated November 22, 1988, to the Company's board of directors stating that certain unnamed senior executives of the Company "appear to be implicated" in the procurement scandal revealed by Operation Ill Wind and demanding that the Company sue the directors for breach of fiduciary duty for failing to hold accountable "those [unidentified] persons responsible for the Company's present plight." The Company responded to this demand on December 21, 1988, requesting that plaintiff's counsel "assist the Board of Directors by providing whatever specific information you have which causes you to believe that particular senior executives or directors of Teledyne, Inc. have engaged in wrongdoing . . . ."

Neither plaintiff nor his counsel responded to the Company's request for further information. Rather, without any further communication with the board, plaintiff filed this action two months later, on February 23, 1989. Defendants demurred to the complaint on the grounds that plaintiff neither complied with the prefiling demand requirement of section 800, subdivision (b) nor alleged sufficient facts to establish that demand would have been futile. The demurrers were sustained with leave to amend.

Thereafter, plaintiff voluntarily posted a $50,000 bond as provided by section 800, subdivision (e).[3] When the sufficiency of plaintiff's prefiling demand was again challenged by way of demurrer to the first amended complaint, plaintiff argued that he had satisfied the requirements of the demand provisions of section 800, subdivision (b) by posting the bond pursuant to subdivision (e). The trial court rejected this argument and sustained the demurrer with leave to amend.

At the hearing on the third demurrer to the complaint, the trial court held that the general "group" allegations against the directors, which did not

---

[3]Subdivisions (c), (d) and (e) of section 800 together constitute a comprehensive scheme providing for the posting of a bond by the plaintiff in a derivative lawsuit. Subdivision (c) provides a mechanism by which a defendant in a derivative action may move the court for an order requiring the plaintiff to furnish a bond on the grounds that (1) "there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders," or (2) "the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity." Subdivision (d) authorizes the court to order the posting of a bond in an amount not to exceed $50,000 to cover the moving party's reasonable expenses, including attorney fees, "[i]f the court determines, after hearing the evidence adduced by the parties, that the moving party has established a probability in support of any of the grounds upon which the motion is based . . . ." Finally, subdivision (e) permits a plaintiff to forego the subdivision (c) motion and subdivision (d) hearing by furnishing a $50,000 bond "to secure the reasonable expenses of the parties entitled to make the motion." By so doing, "the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required." (§ 800, subd. (e).)

specify the precise acts which each individual director allegedly engaged in, were insufficient to establish demand futility. Consequently, the court sustained the demurrer without leave to amend.

## Contentions

The following questions are presented on this appeal: (1) Did plaintiff's posting of a $50,000 bond pursuant to subdivision (e) of section 800 satisfy the demand requirement contained in subdivision (b) of that section? (2) If not, do the allegations of the complaint establish that any demand on the board of directors would have been futile, thus relieving plaintiff of the prefiling demand requirement? Because we answer both of the foregoing questions in the negative, we affirm.

## Discussion

### I

Plaintiff does not argue that the November 22, 1988, letter to the Company's board of directors satisfied the requirements of section 800, subdivision (b). ■ Rather, he contends that his posting of a $50,000 bond as permitted by section 800, subdivision (e) satisfied the demand requirements of subdivision (b). Plaintiff's argument is based on his reading of subdivision (e), which states that in posting a $50,000 bond, "the plaintiff has complied with the requirements of this section." Plaintiff contends that the Legislature's choice of the word "section" instead of "subsection" or "subdivision" evidences its intent that posting a bond obviates the need for a demand on the corporation's board of directors.

We cannot agree with plaintiff's interpretation of the statute. Section 800 imposes three requirements on a plaintiff who wishes to institute a shareholder derivative action, the first two of which are, in effect, standing requirements. First, subdivision (b)(1) requires that the plaintiff have been a shareholder of the corporation at the time of the wrong alleged in the complaint. Second, subdivision (b)(2) requires that the plaintiff give the board of directors the opportunity to consider and act upon the proposed litigation by presenting to the board the "ultimate facts of each cause of action" and the action which plaintiff wishes the board to take to remedy the alleged wrongdoing.[4] Alternatively, the plaintiff may demonstrate that such a demand on the board would have been futile. ■ As noted by one treatise:

---

[4] The plaintiff may inform the corporation of the "ultimate facts of each cause of action" in writing by delivering to the board or to the corporation a true copy of the complaint which the plaintiff proposes to file.

"The purpose of this requirement is to encourage intracorporate resolution of disputes and to protect the managerial freedom of those to whom the responsibility of running the business is delegated. This policy is merely an extension of the business judgment rule, which dictates that judicial interference with corporate decision-making should be limited." (1A Ballantine & Sterling, Cal. Corporations Law (4th ed. 1992) § 292.03, p. 14-19.)

If the plaintiff fails to comply with the requirements of either subdivision (b)(1) or (b)(2) of section 800, the complaint is subject to demurrer.

The third hurdle for the deriviative plaintiff is the requirement of section 800, subdivision (c) that the plaintiff demonstrate a reasonable probability that the prosecution of the cause of action will benefit the corporation or its shareholders. If the complaint fails to establish such a reasonable probability, the defendant may move for a bond to cover its reasonable expenses in defending the suit, which the court is authorized to order in an amount up to $50,000. Section 800, subdivision (e) provides that either before or after the defendant moves for a bond, and before the court rules on the motion, the plaintiff may voluntarily furnish a bond in the amount of $50,000 to secure the defendant's litigation expenses. If plaintiff files a bond pursuant to this provision, any pending motion to require a bond will be dismissed and plaintiff will not be required to post any additional bond.

The language now found in section 800, subdivision (e) was added to section 834 in 1967, and provided that, in the event the plaintiff voluntarily posted a $25,000 bond, the plaintiff "shall be deemed to have fully complied with the requirements of this subdivision . . . ." The purpose of this section was to facilitate the prosecution of legitimate derivative claims by preventing the delay attendant to bond posting hearings and eliminating unnecessarily high security requirements.

In 1974 and 1975, the Legislature undertook a complete revision of the Corporations Code. This legislation was a joint effort of a special select committee appointed by the Assembly and the State Bar Committee on Corporations. Initially, the only recommended change to the shareholder derivative statute, which was renumbered section 800, was an increase in the maximum amount of a security which the plaintiff could be required to furnish. However, as the proposal went through the State Bar review process and then the legislative process, additional changes were made to the bill, and were discussed at length in the select committee's report.

As noted above, when the predecessor to present section 800, subdivision (e) was enacted in 1967, the language provided that if the plaintiff posted the bond, the plaintiff ". . . shall be deemed to have fully complied with the

requirements of this *subdivision* . . . ." (Italics added.) The original draft prepared by the Assembly Select Committee on the Revision of the Corporations Code in 1973-1974 carries forward this use of the term "subdivision." However, in the first State Bar draft circulated around the State, the word "subdivision" had been changed to "section." We found nothing in our review of the materials available on the 1975 revision of the Corporations Code, including the committee analyses and the report of the select committee presenting the bill to the Legislature, which addresses this change or gives any indication that it was recognized as a change.

We conclude that the Legislature's use of the word "section" instead of "subdivision" in the 1975 revision of the Corporation's Code does not evidence an intent to change the purpose or effect of the voluntary bond posting statute. Rather, the rationale behind section 800, subdivision (e) remained the same: Because the plaintiff, by voluntarily posting the bond, has satisfied the purpose of the bonding statute (to provide security for the defendant's reasonable expenses in defending the suit where there is no reasonable probability that the suit will benefit the corporation or its shareholders), "the plaintiff has complied with the requirements of this section," that is, the voluntary bond posting section. Plaintiff's reading of this language to include satisfaction of the standing requirements of section 800, subdivisions (b)(1) and (b)(2) is untenable, as the voluntary posting of a bond does nothing to effect the purposes of those subdivisions. Indeed, plaintiff's interpretation would permit not only the elimination of the demand requirement contained in subdivision (b)(2), which has always been an essential element of a derivative suit, but also the requirement that the plaintiff be a shareholder of the corporation on whose behalf he is suing, the very heart of this type of action. There is not the slightest indication in all of the legislative history of section 800 that the Legislature had any such intention when it revised subdivision (e) in connection with the 1975 overhaul of the Corporations Code.

In our view, the quoted language clearly refers to the bonding provisions of section 800, subdivisions (c) and (d) and not to the whole of the shareholder derivative statute. This interpretation avoids the "absurd consequences" of the "literal abstract reading" which plaintiff advances (*Golden* v. *City of Oakland* (1975) 49 Cal.App.3d 284, 291 [122 Cal.Rptr. 400]) and satisfies our duty "to give statutes a reasonable construction which conforms with the apparent purpose and intent of the Legislature." (*Gaillard* v. *Natomas Co.* (1985) 173 Cal.App.3d 410, 415 [219 Cal.Rptr. 74].)

## II

Plaintiff next maintains that demand on the board was not required because any demand would have been futile. Before we can address this

issue, however, we must determine whether to apply the laws of California or Delaware to the demand futility requirement.

■ Plaintiff maintains that, in a lawsuit filed in California on behalf of a corporation headquartered here which conducts substantially all of its business in this state, California law should apply. Defendants contend that, pursuant to the internal affairs doctrine, Delaware law applies to the demand futility requirement. However, "[t]he fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical." (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].) Defendants do not argue that a different result would obtain if Delaware, rather than California, law is applied, or even that the laws of the two jurisdictions are in conflict. Indeed, the officer defendants state in their brief that "the laws of both states are the same, . . ." a contention which plaintiff does not dispute. Consequently, pursuant to *Hurtado, supra,* we will apply the law of the State of California.

■ Plaintiff's contention that demand on the Company's board of directors would have been futile and was therefore excused is based on the fact that all board members were named as defendants in this suit, are allegedly responsible for the wrongdoing of the employees of Teledyne Electronics who committed crimes on behalf of their employer, and personally benefitted from those criminal acts. Plaintiff cites a number of cases which hold that no demand is necessary when conspiracy, fraud or criminal conduct of the defendants is charged, surely a sound principle. (See, e.g., *Reed* v. *Norman* (1957) 152 Cal.App.2d 892, 898 [314 P.2d 204]). Plaintiff fails to distinguish, however, between the criminal conduct of certain defendants not a party to this appeal and the vague and general allegations of wrongdoing he has leveled against the demurring defendants. As to each director of the Company, plaintiff alleges, in broad conclusory terms, that he "participated in, conspired in, or aided and abetted the criminal and fraudulent activities at issue . . . ." However, the complaint does not allege a single fact which would indicate that the directors had any knowledge of, much less participated in, any criminal or fraudulent activities, nor does it allege that they benefitted directly from the wrongdoing or were otherwise disabled from exercising independent business judgment. The Court of Appeal in *Findley* v. *Garrett* (1952) 109 Cal.App.2d 166, 174 [240 P.2d 421], held that just such broad, conclusory allegations against all directors of a corporation are insufficient to establish demand futility.

A review of the allegations of the *Findley* complaint is instructive. There, a minority of the board of directors of Douglas Aircraft Company was

accused of having breached their fiduciary duties as directors by organizing a second company, the Garrett Corporation, which competed for the business of Douglas, hired away Douglas's skilled labor and otherwise caused injury to Douglas. In addition to the particular allegations of wrongdoing on the part of the Douglas directors who owned shares in Garrett, the plaintiff alleged that the remaining Douglas directors, who had no financial interest in Garrett and were not implicated in the alleged wrongdoing, "became directors of Douglas with full knowledge of the conspiracy of the organizers of Garrett and 'participated' in the acts committed pursuant to the conspiracy, 'became active participants' in the acts of conspiracy, and 'knowingly shielded' and 'actively concealed' said acts of conspiracy by 'affirmative representations' which were 'fraudulent concealments' of material facts . . . ." (*Findley* v. *Garrett, supra,* 109 Cal.App.2d at p. 176.) The court concluded that these are "general statements which are not supported by allegations of specific facts. . . . The general charges of fraud, conspiracy and bad faith are insufficient to overcome the presumption that the . . . board of directors . . . acted independently and honestly in declining to prosecute the claims in question against the defendants." (*Id.,* at p. 177.) In sum, bare allegations of director wrongdoing without factual support cannot excuse demand.[5]

Likewise, the general allegations which plaintiff here indiscriminately levels against all the directors of the Company are insufficient to establish that demand on the board would have been futile. As the court below noted, in order to evaluate the demand futility claim, the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff. Such a showing was not made in this case. "The task of demanding action . . . is not onerous. No policy recommends eviscerating the demand requirement as plaintiff would have us do." (*Greenspun* v. *Del E. Webb Corp., supra,* 634 F.2d 1204, 1210.) Thus the trial court properly sustained the defendants' demurrers to the second amended complaint without leave to amend.

---

[5]Decisions of courts in other jurisdictions are in accord. (See, e.g., *Greenspun* v. *Del E. Webb Corp.* (9th Cir. 1980) 634 F.2d 1204, 1210 [conclusory allegations of director wrongdoing will not suffice to excuse demand]; *Lewis* v. *Sporck* (N.D.Cal. 1985) 612 F.Supp. 1316, 1322 [conclusory allegation that "a majority of the Board of Directors participated in the wrongs herein alleged or have ratified them by refusing to take appropriate action to recover from the wrongdoers and have resisted proper efforts to do so" does not establish demand futility]; *Allison on Behalf of G.M.C.* v. *General Motors Corp.* (D.Del. 1985) 604 F.Supp. 1106, 1114, affd. (3d Cir. 1985) 782 F.2d 1026 ["unless a plaintiff makes sufficiently particular allegations of participation, self-dealing, bias, bad faith, or corrupt motive, failure to make a demand will not be excused"].)

### III

Because our finding that plaintiff failed to meet the predemand filing requirements of section 800 disposes of this action, we do not address the trial court's additional ruling that the complaint failed to state a cause of action. ■ In addition, we deny respondents' request that we take judicial notice of the complaints filed by appellant's counsel in 13 unrelated derivative actions. The allegations of those complaints are irrelevant to a review of the trial court's decision on the demurrers presented to it.

### Disposition

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied June 11, 1993.

APPENDIX

## Corporations Code section 800

(a) As used in this section, "corporation" includes an unincorporated association; "board" includes the managing body of an unincorporated association; "shareholder" includes a member of an unincorporated association; and "shares" includes memberships in an unincorporated association.

(b) No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist:

(1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, or the holder of voting trust certificates at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares or voting trust certificates thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of; provided, that any shareholder who does not meet these requirements may nevertheless be allowed in the discretion of the court to maintain the action on a preliminary showing to and determination by the court, by motion and after a hearing, at which the court shall consider such evidence, by affidavit or testimony, as it deems material, that (i) there is a strong prima facie case in favor of the claim asserted on behalf of the corporation, (ii) no other similar action has been or is likely to be instituted, (iii) the plaintiff acquired the shares before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains, (iv) unless the action can be maintained the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty, and (v) the requested relief will not result in unjust enrichment of the corporation or any shareholder of the corporation; and

(2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

(c) In any action referred to in subdivision (b), at any time within 30 days after service of summons upon the corporation or upon any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or the defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish a bond as hereinafter provided. The motion shall be based upon one or both of the following grounds:

(1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders.

(2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity.

The court on application of the corporation or any defendant may for good cause shown, extend the 30-day period for an additional period or periods not exceeding 60 days.

(d) At the hearing upon any motion pursuant to subdivision (c), the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material (1) to the ground or grounds upon which the motion is based, or (2) to a determination of the probable reasonable expenses, including attorneys' fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the amount of the bond, not to exceed fifty thousand dollars ($50,000), to be furnished by the plaintiff for reasonable expenses, including attorneys' fees, which may be incurred by the moving party and the corporation in connection with the action, including expenses for which the corporation may become liable pursuant to Section 317. A ruling by the court on the motion shall not

be a determination of any issue in the action or of the merits thereof. If the court, upon the motion, makes a determination that a bond shall be furnished by the plaintiff as to any one or more defendants, the action shall be dismissed as to the defendant or defendants, unless the bond required by the court has been furnished within such reasonable time as may be fixed by the court.

(e) If the plaintiff shall either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion, furnish a bond in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required.

(f) If a motion is filed pursuant to subdivision (c), no pleadings need be filed by the corporation or any other defendant and the prosecution of the action shall be stayed until 10 days after the motion has been disposed of.