Filed 12/11/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| APPLE INC. et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>      Respondent;<br><br>THE POLICE RETIREMENT SYSTEM OF ST. LOUIS et al.,<br><br>      Real Parties in Interest. | H044133<br>(Santa Clara County<br>Super. Ct. No. 1-14-CV262174) |

This writ petition presents an issue of first impression concerning the demand futility pleading requirement in a shareholder derivative suit under California law. The question is whether a plaintiff alleging derivative claims in an amended complaint following the grant of leave to amend must plead demand futility with respect to the board of directors in place as of the filing of the *amended* complaint or the *initial* complaint, when the composition of the board of directors has changed in the interim.

Petitioners Apple Inc. (Apple), Timothy Cook, Millard Drexler, and Arthur Levinson (together "petitioners") argue that fundamental principles of corporate law require the court to assess demand futility as to the board in place when the amended complaint is filed, consistent with the rule enunciated by the Delaware Supreme Court in *Braddock v. Zimmerman* (2006) 906 A.2d 776 (*Braddock*). Respondent Santa Clara County Superior Court declined to apply the *Braddock* rule, citing the absence of any published California authority on the issue. The superior court overruled petitioners'

demurrer after finding that the amended complaint adequately alleged demand futility as to the board in place when the original action was filed. Plaintiffs and real parties in interest the Police Retirement System of St. Louis, John Krawczyk, II, and John Barto (together "plaintiffs") argue that the court applied the correct rule and, in any event, that the amended complaint adequately pleads demand futility regardless of which board of directors is considered.

We conclude that *Braddock* is consistent in relevant respects with California law and that, under the circumstances of this case, the respondent superior court should have assessed the pleading of demand futility with respect to the board of directors in place at the time the amended complaint was filed.

## I.     OVERVIEW OF APPLICABLE LEGAL PRINCIPLES

The issues presented herein may be better understood in view of certain principles of corporate law and shareholder derivative suits. We begin with the summary of these principles set forth in *Bader v. Anderson* (2009) 179 Cal.App.4th 775 (*Bader*).

As a general rule, "[m]anagement of a corporation, including decisions concerning the prosecution of actions, is vested in its board of directors. When the board refuses to enforce corporate claims, however, the shareholder derivative suit provides a limited exception to the rule that the corporation is the proper party plaintiff. In deference to the managerial role of directors and in order to curb potential abuse, the shareholder asserting a derivative claim must make a threshold showing that he or she made a presuit demand on the board to take the desired action. This demand requirement was recognized over 120 years ago by the Supreme Court (see *Hawes v.* [*City of Oakland*] (1881) 104 U.S. 450), and is codified in California (see Corp. Code, § 800, subd. (b)(2); hereafter, § 800(b)(2)).[1] Under section 800(b)(2), a plaintiff must plead 'with particularity' the attempts that were made to secure board action before bringing suit, or, alternatively, the factual basis upon which the plaintiff believes that a demand on the board was

---

[1] Unspecified statutory references are to the Corporations Code.

2

unnecessary, i.e., that a demand would have been futile. Difficulties often arise in shareholder derivative suits in resolving whether the plaintiff has alleged sufficient facts supporting demand futility, thereby obviating the need for a prior demand on the board and the concomitant opportunity for the directors to decide whether to pursue litigation on the corporation's behalf." (*Bader*, *supra*, 179 Cal.App.4th at p. 782.)

Because the role of managing the business of the corporation is vested in its board of directors, not its shareholders (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*)), a shareholder seeking redress on behalf of the corporation for alleged mismanagement by corporate officers " 'must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be apparent to the court.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 789.) The presuit demand requirement provides " 'a limited exception to the usual rule that the proper party to bring a claim on behalf of a corporation is the corporation itself, acting through its directors or the majority of its shareholders. . . .' " (*Ibid.*) It serves primarily " ' "to protect the managerial freedom of those to whom the responsibility of running the business is delegated . . . ." ' " (*id.* at pp. 789-790) and "to prevent the abuse of the derivative suit remedy." (*Id.* at p. 790.)

In accordance with this purpose, California law requires the plaintiff who files a shareholder derivative suit to "allege[] in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and allege further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." (§ 800(b)(2).) Demand futility under section 800(b)(2) thus requires a plaintiff who alleges "reasons for not making such effort" to plead, with particularity, the circumstances excusing her from making a demand. (*Ibid.*)

3

*Bader* explained that few California cases have delineated the circumstances constituting demand futility, but "given the requirement under section 800(b)(2) that allegations be made 'with particularity,' it is clear that general averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice . . . . [Citation.] Likewise, a general claim that there is nationwide structural bias common to corporate boards will not excuse the making of a demand before bringing a derivative suit. [Citation.] Rather, 'the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 790.)

California courts commonly look to two tests enunciated by the Delaware Supreme Court for determining the adequacy of the pleading of demand futility. Where a decision of the board of directors is challenged in the derivative suit, the *Aronson* test asks "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (*Aronson v. Lewis* (Del. 1984) 473 A.2d 805, 814 (*Aronson*);[2] accord *Bader*, *supra*, 179 Cal.App.4th at p. 791; *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 587 (*Oakland Raiders*).) But where "the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit" (*Rales v. Blasband* (Del. 1993) 634 A.2d 927, 933-934 (*Rales*)), the *Rales* test asks whether "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will

---

[2] The Delaware Supreme Court overruled *Aronson* on another point not relevant to our discussion here. (See *Brehm v. Eisner* (Del. 2000) 746 A.2d 244, 254-255.)

be excused as futile." (*Rales*, *supra*, at p. 934; accord *Bader*, *supra*, at pp. 791-792 [summarizing *Rales*].)

These principles are not in debate here. But neither do they answer whether California law requires the plaintiff to reassert demand futility upon the filing of an amended derivative complaint when the composition of the board of directors has changed. In the absence of California authority, the parties dispute the applicability of Delaware case law addressing that scenario, as set forth in *Braddock*.

The Delaware Supreme Court in *Braddock* considered under what circumstances a shareholder is required to make demand or plead demand futility when filing an amended derivative complaint. Following the precept that boards of directors manage the affairs of corporations and, by extension, must be given the opportunity through the demand requirement to rectify an alleged wrong or control any litigation that arises, the court ruled that a change in the composition of a previously conflicted board is relevant insofar as it may determine whether, "as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." (*Braddock*, *supra*, 906 A.2d at p. 785.) The court found this to be true, however, "only as to derivative claims in the amended complaint that are not already validly in litigation." (*Id*. at p. 786.) *Braddock* thus stands for the proposition that the demand inquiry in an amended derivative complaint following a dismissal without prejudice "must be assessed by reference to the board in place at the time when the amended complaint is filed." (*Ibid*.)

We consider *Braddock*'s application under California law after reviewing the pertinent facts and detailed procedural history of this case.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A. COMPLAINT ALLEGATIONS

Plaintiffs, who are Apple shareholders, bring this consolidated derivative action on behalf of nominal defendant Apple. The heart of plaintiffs' case is Apple's alleged

pursuit and enforcement of anticompetitive agreements with other Silicon Valley companies to prohibit the recruitment or "cold calling" of each other's employees. Plaintiffs allege that certain current and former members of Apple's board of directors were aware of or tacitly approved of Apple's practices and breached their fiduciary duties by enabling or permitting these illegal agreements over many years.

The action at bar consolidates three individual shareholder derivative lawsuits filed in March, April, and July 2014. It follows the settlement of an action filed by the Department of Justice in 2010 against Apple, Adobe, Google, Intel, Intuit, and Pixar based on " 'violations of the federal antitrust laws,' " which plaintiffs allege the Apple board never disclosed to shareholders in any proxy statement or regulatory filings, and several federal class action lawsuits brought by employees of Apple and other technology companies, which were consolidated under the caption *In re High-Tech Employee Antitrust Litigation*, No. 11-CV-2509-LHK (N.D. Cal.) and settled in March 2015.

After the superior court sustained with leave to amend demurrers to plaintiffs' consolidated shareholder derivative complaint, filed in September 2014 ("initial complaint") and amended consolidated shareholder derivative complaint, filed in June 2015 ("amended complaint"), plaintiffs filed a second amended consolidated shareholder derivative complaint in April 2016 ("operative complaint"). The operative complaint names nominal defendant Apple and individual defendants Timothy Cook, William Campbell, Millard Drexler, Eric Schmidt, and Arthur Levinson.[3] Of five causes of action asserted in the operative complaint, only two remain in issue for purposes of this writ petition.[4] These are the first and fifth causes of action against the individual defendants for breach of fiduciary duty and for indemnification and contribution.

---

[3] Only defendants Cook, Drexler, Levinson, and Apple are petitioners herein.
[4] The superior court sustained without leave to amend petitioners' demurrer to the operative complaint as to the three other causes of action.

According to the operative complaint, top executives and directors at Apple beginning in approximately 2005 entered non-solicitation agreements with executives at companies such as Adobe, Google, and Intel, which had the effect of regulating competition for talent and suppressing salaries and job mobility. Apple co-founder and former CEO Steve Jobs was passionate and outspoken about preventing companies who worked with Apple from poaching Apple's technical team members. Jobs "was vocal that companies working together should not hire each other's employees and that there should not be cross-fertilization of technical knowledge." Pressure tactics implemented by Jobs and reinforced at high levels eventually resulted in "similar anticompetitive agreements, policies, or practices" with "approximately twenty-five other companies," including several outside the technology sector.

Plaintiffs allege that Apple was particularly effective at driving these collusive agreements because it shared common directors and senior advisors with other companies. For example, plaintiffs cite a "Hands Off (Do Not Call List)" circulated among Apple employees in July 2009, which specified companies that were off-limits to recruitment, including several denoted as sharing a common board member, as well as deposition testimony allegedly confirming that certain defendants' respective positions at those companies brought the companies within Apple's "Do Not Call" policy. Plaintiffs allege that based on overlapping board memberships, close relationships between the companies, and Jobs'S "vocal disapproval of employees changing companies, there can be no doubt that the entire [Apple] Board knew about the agreements and facilitated the unlawful conspiracy." Plaintiffs further impute knowledge of the agreements to the directors who served on the board's compensation committee. The committee was responsible for overseeing the development of compensation programs for employees and regularly "evaluated the competitiveness of Apple's compensation practices in comparison to peer technology companies." Given each board member's alleged role in participating in or allowing the illegal agreements, plaintiffs claim that "any demand" on

the Apple board to institute the derivative action against the individual defendants "is excused" and would have been "a futile and useless act . . . ."

## B. PLEADING OF DEMAND FUTILITY ON APPLE'S 2014 BOARD OF DIRECTORS

Plaintiffs' initial complaint named nominal defendant Apple and the same individual defendants (Cook, Campbell, Drexler, Schmidt, and Levinson) as the later, operative complaint. It alleged that when the original shareholder derivative suits were filed, Apple's board of directors had eight members: defendants Cook, Campbell, Drexler, and Levinson, and non-defendants Robert Iger, Albert Gore, Jr., Andrea Jung, and Ronald Sugar (hereafter the "2014 Board").

Plaintiffs generally alleged that any demand before filing the initial complaint would have been futile because the 2014 Board had proceeded "with eyes closed shut," abdicating its responsibility to ensure that business decisions complied with applicable laws and ignoring the significant liability exposure for the company and adverse effect that Apple's anticompetitive agreements had on attracting highly skilled employees. Plaintiffs specifically alleged demand futility as to defendants Campbell, Drexler, Levinson, Cook, and non-defendant Iger based on each directors' entrenchment in the company and personal and professional relationships with other members of the board, as well as their roles at several key companies that purportedly had entered into restrictive hiring agreements with Apple.

Petitioners[5] filed a demurrer, which the trial court sustained with leave to amend, finding that plaintiffs had not alleged that non-defendants Jung or Gore were disinterested and that "the allegations do not sufficiently demonstrate with particularity that a majority of directors participated in or approved the wrongdoing."

Plaintiffs then filed the amended complaint with causes of action for (1) breach of fiduciary duty and (2) indemnification and contribution. They alleged demand futility

---

[5] Petitioners were joined by defendant Schmidt in the filing of each successive demurrer mentioned herein.

with respect to Apple's 2014 Board, in place when the original derivative actions were filed.

Petitioners demurred to the amended complaint. Although the notice of demurrer set forth two grounds for demurrer—failure to state facts sufficient to establish standing and excuse plaintiffs' failure to make a demand, and/or failure to state a cause of action— petitioners argued only the standing and demand futility ground. They declared that since the filing of the original derivative actions, defendants Campbell and Drexler had left Apple's board, and Susan Wagner had joined the board. Petitioners argued that as a matter of law, demand futility must be analyzed as of the filing of the then-current (amended) complaint filed in June 2015, not with respect to the board in place when the prior, legally insufficient claims were filed. Petitioners contended that the "compelling logic" of the Delaware Supreme Court's decision in *Braddock* should apply under the extraordinary circumstances of a derivative action that seeks to divest a company's board of its authority to consider and oversee litigation.

The superior court declined to apply *Braddock*, noting that Apple was a California corporation and petitioners had failed to cite "any California authority supporting" their argument that the relevant board was that in place as of the filing of the amended complaint. The court also sought to distinguish *Braddock*, noting that its order sustaining petitioners' prior demurrer to the initial complaint did not " 'dismiss' " the action, but simply sustained the demurrer with express leave to amend.

The superior court nonetheless found that the amended complaint failed to state sufficient, particularized facts to excuse demand as to a majority of the 2014 Board. The court emphasized that general allegations of involvement in a conspiracy, based on the inference that a majority of the board expressly or tacitly approved the anticompetitive agreements and practices, are not sufficient to establish demand futility under California law. The court sustained the demurrer with leave to amend on that ground but overruled the demurrer on the alternative ground of failure to state facts sufficient to constitute a

9

cause of action, noting it was "entirely unsupported" by any argument in petitioners' papers.

Plaintiffs filed the operative complaint in April 2016, again alleging demand futility with respect to the 2014 Board. Petitioners' demurrer to the operative complaint argued that plaintiffs had failed to allege demand futility with sufficient particularity and, based on the reasoning of *Braddock*, should have alleged demand futility with respect to the current board. Specifically, since the filing of the original actions and the amended complaint, Susan Wagner had replaced defendant Campbell, and James Bell had replaced defendant Drexler. Petitioners contended that the operative complaint failed to allege demand futility as to non-defendant directors Wagner, Bell, and Sugar, and alleged only conclusory facts regarding non-defendant directors Jung, Gore, and Iger. Petitioners maintained that the "lack of material allegations against six of Apple's eight" board members was "alone sufficient to defeat" plaintiffs' claims, though the operative complaint also failed to plead demand futility as to the 2014 Board. Plaintiffs further demurred to the operative complaint causes of action on the ground of failure to state facts sufficient to constitute a cause of action.

## C. ORDER ON THE OPERATIVE COMPLAINT

In a detailed written order, the superior court overruled the demurrer to the first and fifth causes of action for breach of fiduciary duty and indemnification on the ground of demand futility and standing, but rejected the demurrer to those causes of action for failure to state a claim, noting it had overruled petitioners' prior demurrer on that ground for having failed to offer any argument in support. The court sustained without leave to amend the demurrer to the other three causes of action, finding the asserted claims were beyond the scope of the prior order granting leave to amend.

On the issue of demand futility, the court adhered to its earlier conclusion that demand futility is assessed as of the time a derivative action is filed, noting that petitioners "still cite no authority" applying *Braddock* under California law. The court

10

found that plaintiffs had specifically alleged demand futility as to defendants Campbell, Cook, and Levinson. In a footnote, the court further found that particularized facts regarding defendant Drexler and non-defendant Iger supported a "reasonable inference" that demand was futile as to those two directors. Regarding the board generally, the court stated that "specific allegations of widely-known misconduct spanning many years and involving numerous Silicon Valley companies with shared board members, coupled with the direct evidence of knowledge and participation by some Apple board members, support an inference that a majority of the board knew of and condoned these agreements and establishes demand futility for purposes of demurrer." The court concluded that the operative complaint met the demand excusal requirement for at least half of the 2014 Board, allowing the first and fifth causes of action to proceed.

Petitioners sought writ relief from this court directing the respondent superior court to vacate its order overruling the demurrer and to enter a new order sustaining the demurrer as to the first and fifth causes of action. We issued an order to show cause and stayed the superior court proceedings, and requested briefing from the parties.

### III. DISCUSSION

#### A. PROPRIETY OF WRIT RELIEF

"An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner." (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) "Although appellate courts are loath to exercise their discretion to review rulings at the pleading stage, they will do so where the circumstances are compelling and the issue is of widespread interest. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 816.)" (*County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 126.)

11

Writ review is appropriate here to help ensure the pleading of demand futility in derivative suits involving California corporations is consistent in relevant respects with California corporate law—including with case authority that looks to Delaware law on related issues in derivative litigation. Plaintiffs argue, unconvincingly, that writ relief is inappropriate because an appeal would be available following a judgment in this case, and any claimed harm due to petitioners' purported loss of the right to control the company's litigation is not irreparable and could be addressed by appointment of " 'a special litigation committee of independent directors to investigate the challenged transaction.' " (*Patrick v*. *Alacer Corp*. (2008) 167 Cal.App.4th 995, 1005 (*Patrick*).) But as *Patrick* makes clear, a board's ability to appoint a special litigation committee to investigate the merits of the derivative claim and potentially assert the special litigation committee defense does not alter or negate its right to contest the derivative plaintiff's standing in the first instance.

The standing requirements for a derivative action, including the demand requirement, "reflect the limited adverse relationship between the shareholder plaintiff and the corporation." (*Patrick*, *supra*, 167 Cal.App.4th at p. 1004.) It follows that while the corporation cannot "challenge the merits of a derivative claim filed on its behalf and from which it stands to benefit," it "may assert defenses contesting the plaintiff's right or decision to bring suit, such as asserting the shareholder plaintiff's lack of standing *or* the [special litigation committee] defense." (*Id*. at p. 1005, emphasis added.) *Patrick* outlines these dual avenues of recourse but says nothing about the availability of writ relief if the standing issue is wrongly decided. This distinction is important since appointment of a special litigation committee may presuppose that other members of the board are interested. (See *Oakland Raiders*, *supra*, 93 Cal.App.4th at p. 590 ["failure to appoint a special litigation committee to investigate the claims made in a derivative suit cannot raise an inference of demand futility because there is no necessity to appoint a special litigation committee if the board itself is disinterested"]; *Desaigoudar v*.

12

*Meyercord* (2003) 108 Cal.App.4th 173, 184-185 [the "common practice" in shareholder derivative suits alleging wrongdoing on the part of a majority of directors is for the board to appoint a special litigation committee of independent directors to investigate the challenged transaction].)

The question presented in this case is whether the superior court utilized the correct framework to analyze the alleged interest of the members of the board, and thus whether plaintiffs have properly pleaded demand futility and can proceed with the derivative litigation. Because appointment of a special litigation committee would not resolve that question, the extraordinary remedy of writ review is appropriate.

## B. STANDARD OF REVIEW

We review an order overruling a demurrer de novo, accepting as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. (*Casterson v. Superior Court*, *supra*, 101 Cal.App.4th at pp. 182-183.) The settled rules for reviewing the sufficiency of a complaint apply: " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 786, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Accordingly, we review de novo the allegations of the operative complaint against the particularized demand futility pleading requirement applicable to shareholder derivative litigation and with respect to the relevant board of directors at Apple.

## C. ANALYSIS

Petitioners contend that the superior court erred in two ways: first, by declining to adopt the reasoning of *Braddock* and instead assessing demand futility with respect to the board of directors in place when the derivative litigation commenced; and second, by

13

inferring that demand would have been futile as to an unspecified majority of the Apple board even though plaintiffs alleged particularized facts as to only three directors.

Plaintiffs respond that this court need not reach the issue of whether *Braddock* applies under California law, because (1) they have adequately alleged demand futility regardless of which board of directors is considered, and (2) the reasoning and factual circumstances of *Braddock* are distinguishable since that case involved "the existence of a new independent board of directors" (*Braddock*, *supra*, 906 A.2d at p. 786) following dismissal of the prior complaint, whereas in this case only two out of the eight members of Apple's board of directors had changed as of the filing of the operative complaint, which was based on the grant of leave to amend. Plaintiffs also contend that petitioners have not established the timing of any changes to the Apple board. They argue that although the superior court took judicial notice of certain Securities and Exchange Commission (SEC) filings describing the changes to the Apple board, such notice extended only to the existence and content of the documents, not to their truth.

### 1. *Composition of the Apple Board of Directors*

As a preliminary matter, we reject the argument that the writ petition may be denied because petitioners failed to establish the changes to Apple's board. Plaintiffs acknowledge that the superior court granted judicial notice of certain regulatory filings submitted in support of the demurrer.[6] The court expressly limited notice "to the existence and content" of the documents and made no finding as to "the truth of statements in these documents."

---

[6] The superior court granted petitioners' request for judicial notice of certain forms filed by Apple with the SEC, including copies of the following: (1) form 8-K, dated July 15, 2014, announcing the retirement of William Campbell from the board, and the appointment of Susan Wagner to the board "concurrently with" Campbell's retirement; (2) excerpt of Apple's definitive proxy statement (schedule 14A), dated January 22, 2015, announcing that Millard Drexler would retire from Apple's board as of the annual meeting on March 10, 2015, leaving one vacancy; and (3) form 8-K, dated October 1, 2015, announcing the appointment of James Bell to the board.

14

The superior court's ruling is consistent with the general rule that judicial notice of a document does not extend to the truthfulness of its contents or the interpretation of statements contained therein, if those matters are reasonably disputable. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103-1104; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113 (*Fremont*).) Our Supreme Court noted this limitation in *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449 (*StorMedia*), explaining: "In ruling on a demurrer, a court may consider facts of which it has taken judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) This includes the existence of a document. When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable. [Citation.] A reviewing court may consider facts judicially noticed by the trial court or those which the trial court properly could have noticed. (Evid. Code, § 459.)" (*Id.* at p. 457, fn. 9.)

While the truthfulness or proper interpretation of a judicially-noticed document is disputable, we are not persuaded that such a dispute exists here. Plaintiffs did not contest or question petitioners' showing regarding the composition of Apple's board until this writ proceeding. We might assume this was because the superior court indicated it would assess demand futility with respect to the 2014 Board. Yet even in this court, plaintiffs offer no alternate interpretation of the SEC filings and point to no contrary evidence to suggest the timing of changes to the board is in dispute. This stands in contrast to cases involving the erroneous use of judicial notice on demurrer, where a document is subject to conflicting interpretations and the ruling on demurrer improperly determines disputed facts. (See, e.g., *Fremont*, *supra*, 148 Cal.App.4th at pp. 112-115 [trial court erred by taking judicial notice of disputed letter agreement and interpreting the document].)

The taking of judicial notice of Apple's SEC filings establishes only their existence and reported contents, and more closely resembles cases in which there is no factual dispute concerning the matter to be noticed. (See, e.g., *StorMedia*, *supra*, 20 Cal.4th at p. 457, fn. 10 [confirming allegations in the complaint by referencing a

15

judicially-noticed employee stock purchase plan that showed the " 'exercise date' on which stock was sold to participants"]; *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 375 [trial court could consider facts that were disclosed by the judicially-noticed deposition and were not disputed].) We therefore accept, for purposes of the writ petition, petitioners' showing that between the filing of the original derivative actions in 2014 and the filing of the operative complaint in April 2016, defendants Drexler and Campbell departed from the eight-member board of directors, and non-defendants Susan Wagner and James Bell joined the board.[7]

Since the superior court determined that plaintiffs sufficiently alleged demand futility as to five of the eight Apple directors (Campbell, Cook, Levinson, Drexler, and Iger) based on the composition of 2014 Board, but only three of these five directors remained on the board as of the filing of the operative complaint—constituting less than a majority—it is critical to identify which board is relevant for assessing demand futility.

### 2. The Rationale of the Delaware Supreme Court in Braddock Applies to the Pleading of Demand Futility Under California Law

The superior court founded its demand futility analysis on the principle that "under California law, demand futility is assessed as of the time a derivative action is initially filed." The court drew its conclusion in part from this court's decision in *Bader*. As we shall explain, the superior court's conclusion was not incorrect but was incomplete under the circumstances. The principles governing derivative litigation under California law lead us to conclude, consistent with *Braddock*, that when a trial court declares derivative claims to be legally insufficient and grants leave to amend, the demand requirement must

---

[7] This chart compares the board as of the filing of the original derivative actions (2014 Board) and the operative complaint. The named defendants are in boldface type.

*Composition of Apple's Board of Directors*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *As of the original derivative actions:* | Sugar | Jung | Gore | Iger | **Campbell** | **Drexler** | **Levinson** | **Cook** |
| *As of the operative complaint:* | Sugar | Jung | Gore | Iger | Wagner | Bell | **Levinson** | **Cook** |

16

be reassessed against the disinterest and independence of the board of directors in place when the amended derivative claims are filed.

### a. The Reasoning in Braddock Is Consistent with California Law

As discussed in section I, *Bader* adopted the Delaware Supreme Court's tests for the pleading of demand futility, set forth in *Aronson* and *Rales*. *Bader* explained that where the derivative claims challenge an affirmative decision or act of the board, the adequacy of the pleading is determined by the two-pronged test from *Aronson*. (*Bader*, *supra*, 179 Cal.App.4th at pp. 790-791.) Under that test, " '[f]utility is gauged by the circumstances existing at the commencement of a derivative suit.' " (*Id*. at p. 791, quoting *Aronson*, *supra*, 473 A.2d at p. 810.) This passage supports the general rule that demand futility is measured as of the time the derivative action is filed.

But as *Bader* recognized, Delaware courts do not apply the *Aronson* test mechanically. Thus, where the challenged conduct did not arise from board action, the court applies the alternate test from *Rales*, which "inquires 'whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 791, quoting *Rales*, *supra*, 634 A.2d at p. 934.) That test asks whether the allegations " 'create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.' " (*Bader*, *supra*, at pp. 791-792.) The *Rales* test highlights the specificity of the demand inquiry in relation to the nature of the conduct challenged and the board's alleged role, if any, in that conduct.

*Bader* applied California law,[8] yet relied on *Rales* and *Aronson* to define the demand futility inquiry. The court explained in dicta that although there was "little to suggest that" Delaware law controlled the assessment of demand futility with respect to

---

[8] Like here, the shareholder derivative action in *Bader* was brought nominatively on behalf of Apple, a California corporation. (*Bader*, *supra*, 179 Cal.App.4th at p. 782.)

the board of a California corporation, "Delaware corporate law is not inconsistent with California law" relevant to shareholder derivative suits and demand futility and may be "instructive." (*Bader*, *supra*, 179 Cal.App.4th at p. 791, fn. 5.) We abide by this assessment in considering the applicability of *Braddock*. Since no California authority has addressed the issue before us, and California's demand requirement standards closely track Delaware law,[9] we turn to the Delaware Supreme Court's analysis in *Braddock*.

*Braddock* was a shareholder derivative action in which the plaintiff's first amended complaint was dismissed in its entirety, without prejudice, for failing to comply with the demand requirement of Delaware's Court of Chancery rule 23.1.[10] (*Braddock*, *supra*, 906 A.2d at p. 779.) Nearly two years later, the plaintiff sought leave to file a second amended complaint. By that time, five members of the board of directors had been replaced, and two new board seats had been created and filled, resulting in a

---

[9] This court has previously noted, when assessing demand futility, that courts can "properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes." (*Oakland Raiders*, *supra*, 93 Cal.App.4th at p. 586, fn. 5; see also *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1621 (*Shields*) [analyzing demand futility under California law but noting the parties viewed both states' laws as substantially the same].)

So too, when parties dispute whether California or Delaware law governs a derivative action, courts may find it unnecessary to resolve the choice of law dilemma because the outcome under both is the same. (See, e.g., *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 [deeming complaint a derivative action "under either California or Delaware law"].) Our Supreme Court took this approach in analyzing a shareholder's standing to pursue derivative claims on behalf of a Delaware corporation that was based in San Diego. (*Grosset*, *supra*, 42 Cal.4th at pp. 1104, 1106-1107.) The court found it unnecessary to resolve the dispute over the application of Delaware or California law, concluding "that California law, like Delaware law, generally requires a plaintiff in a shareholder's derivative suit to maintain continuous stock ownership throughout the pendency of the litigation." (*Id.* at p. 1119.)

[10] Delaware's Court of Chancery rule 23.1(a) states in relevant part that in a derivative action brought by shareholders of a corporation, the complaint shall "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

18

13-member board that included only six of the former members. (*Braddock*, *supra*, at p. 779.) The defendants opposed leave to file the second amended complaint, arguing in part that demand futility had to be assessed with respect to the new board, since the majority was disinterested and capable of independently consider the plaintiff's claims. (*Braddock*, *supra*, at p. 780.) The Court of Chancery, however, ruled that because the single count in the second amended complaint was alleged in the first amended complaint, it remained " 'validly in litigation' " and, therefore, demand was properly excused based on the board that was in place at the time of the first amended complaint. (*Braddock*, *supra*, at p. 780.)

The Delaware Supreme Court reversed. It held that "the Court of Chancery should have assessed demand futility . . . with regard to the board that was in place at the time" the second amended complaint was filed. (*Braddock*, *supra*, 906 A.2d at p. 786.) The court explained that demand futility must be determined pursuant to the standards articulated in *Aronson* or in *Rales*. (*Id*. at p. 784.) The demand requirement should not be construed so " 'as to stall the derivative suit mechanism where it has been properly initiated' or to 'interrupt litigation.' " (*Id*. at p. 785.) But when "the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal," the court reasoned that "the existence of a new independent board of directors is relevant" to the "derivative claims in the amended complaint that are not already validly in litigation." (*Id*. at p. 786.)

The court specified three conditions that "must exist to excuse a plaintiff from making demand . . . when a complaint is amended after a new board of directors is in place: first, the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint." (*Braddock*, *supra*, 906 A.2d at p. 786.) Since claims that have been dismissed without prejudice and with leave to amend are

19

"not validly in litigation," the *Braddock* court concluded that a plaintiff who files an amended complaint under those circumstances must comply with the demand requirement "by reference to the board in place at the time when the amended complaint is filed." (*Ibid*.)

Petitioners urge this court to adopt the rule set forth in *Braddock* as a matter of California law. They maintain that *Braddock* simply extended the general rule, followed in Delaware and in California, that a plaintiff bringing a derivative suit must make demand on the company's board to take legal action or show that it would have been futile to do so at the time the case was initiated. They argue that *Braddock* reinforces the policy behind the demand requirement, imposes no improper burden on plaintiffs, and ensures consistency with courts applying Delaware law and the laws of other states.

In response, plaintiffs dispute the relevance of *Braddock*—suggesting that Delaware cases do not reveal a clear doctrine as to the demand requirement when an amended complaint is filed—and seek to distinguish *Braddock* as setting forth a narrow exception that does not apply under the circumstances in this case.

We find that *Braddock* expresses a narrow extension of the general rule and furthers the "fundamental purpose of a derivative action," which "is to provide a means by which a stockholder may seek to enforce the rights of a corporation when the corporate board refuses to do so." (*Grosset*, *supra*, 42 Cal.4th at p. 1114.) Plaintiffs offer no compelling reason—and we have identified none—for departing from *Braddock*'s sound conclusion that when an amended complaint asserts derivative claims that are not already validly in litigation, the demand requirement pertains to the board of directors in place at that time. (*Braddock*, *supra*, 906 A.2d at p. 786.)

The narrow application of *Braddock* belies plaintiffs' claim that implementing its rule will allow corporate defendants to file seriatim demurrers with each amended complaint and require the court to revisit the threshold demand futility issue. To begin, a derivative plaintiff under California law already must make a demand on the company's

20

board to take legal action or show that it would have been futile to do so at the time the case is initiated. (§ 800(b)(2).) If the suit is properly initiated and the derivative claims are validly in issue, the presuit demand requirement has been met; hence, the filing of an amended complaint arising from those same claims will not trigger reassessment of the demand requirement.

*Braddock* reiterated this point by citing an earlier Court of Chancery ruling: " 'When claims have been properly laid before the court and are in litigation, neither [the demand requirement] nor the policy it implements requires that a court decline to permit further litigation of those claims upon the replacement of the interested board with a disinterested one . . . . [¶] . . . [A]n amendment or supplement to a complaint that elaborates upon facts relating to acts or transactions alleged in the original pleading, or asserts new legal theories of recovery based upon the acts or transactions that formed the substance of the original pleading, would not . . . require a derivative plaintiff to bring any part of an amended or supplemental complaint to the board prior to filing.' " (*Braddock*, *supra*, 906 A.2d at p. 785.)

Only if the trial court has deemed the complaint inadequate—either for failure to state a claim or failure to meet the demand requirement, and the plaintiff reasserts the derivative claims in an amended complaint to avoid dismissal—will the rule apply. *Braddock* preserves this distinction by identifying the circumstances in which a plaintiff filing an amended derivative complaint need *not* make demand—or plead its futility— with respect to a new board. Under this rubric, a plaintiff who demonstrates that the original complaint was well pleaded as a derivative action, that it satisfied the legal test for demand excusal, and that the amendment pertains to the same act or transaction challenged in the original complaint, need not reassert demand futility with respect to the new board. (*Braddock*, *supra*, 906 A.2d at p. 786; see also *Uni-Marts ex rel. Dairy Mart Convenience Stores v. Stein* (Del. Ch. 1996) 1996 Del. Ch. Lexis 95; *In re Fuqua Indus. Shareholder Litig.* (Del. Ch. 1997) 1997 Del. Ch. Lexis 72 at p. 55 [if demand is excused

21

as of the filing of the initial complaint, the existence of a disinterested board as of the filing of the amended complaint "affects only those claims not already validly in litigation"].)[11]

Plaintiffs suggest that *Braddock* did not establish a clear doctrine for Delaware cases, which continue to gauge demand futility as of the time the original derivative complaint is filed. Even if we were to overlook that *Braddock* was decided by the Delaware Supreme Court, which "is of course the final arbiter on matters of Delaware law" (*Feeley v. NHAOCG, LLC* (Del. Ch. 2012) 62 A.3d 649, 663), the two unpublished cases that plaintiffs cite neither question nor contradict *Braddock*. One case is inapposite, as it addresses the pleading of demand futility at the subsidiary level in a double derivative action when the company obtained subsidiary status only after the plaintiff initiated the action (*Belendiuk v. Carrión* (Del. Ch. 2014) 2014 Del. Ch. Lexis 126 at *8), and the other directly applies *Braddock* and, in fact, stands for the opposite proposition stated by plaintiffs. In that case, the court found the original derivative claims were *not* validly in litigation when the plaintiffs amended their complaint; thus the plaintiffs were required to make demand at the time they filed the second amended complaint, or to plead that demand would be futile at that time. (*In re Affiliated Computer Servs. S'holders Litig.* (Del. Ch. 2009) 2009 Del. Ch. Lexis 35.) Furthermore, courts in

---

[11] Certain authority cited herein is unpublished. We note that although an unpublished California case opinion may not be cited or relied upon (Cal. Rules of Court, rule 8.1115), citing unpublished opinions from other jurisdictions for their persuasive value does not violate this rule. (See *In re Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18 ["Citing unpublished federal opinions does not violate our rules"]; *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 [explaining that opinions from other jurisdictions—some which have different publication criteria than California—can be cited without regard to their publication status and may be regarded as persuasive].)

22

jurisdictions that look to or follow Delaware law with respect to determining demand futility have consistently applied *Braddock*.[12]

*Braddock* thus remains authority under Delaware law and is consistent with the principles behind the demand requirement in California. Viewed as a matter of standing, a determination on demurrer that a plaintiff has failed to adequately allege demand futility means the plaintiff has yet to establish standing to pursue the derivative claims. As the Court of Appeal explained, "[F]or a plaintiff to have standing to file a derivative action, it must allege the corporation knew about the claim and was urged to pursue it to no avail or, in any event, the corporation would not have pursued the claim." (*Patrick*, *supra*, 167 Cal.App.4th at pp. 1004-1005.) It follows that a plaintiff reasserting derivative claims in an amended complaint, after a sustained demurrer on demand futility grounds, remains subject to the standing requirement and must allege demand futility with respect to the board that would be addressing demand at that time. (See *Bader*, *supra*, 179 Cal.App.4th at p. 791 [court "inquires 'whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations' "].) To conclude otherwise would dilute the function of the demand requirement, which serves to protect the managerial freedom of the board and to prevent abuse of the derivative suit remedy, since the prior pleading never met the basic demand precondition to "institut[ing] or maintain[ing]" a derivative claim (§ 800, subd. (b)).

We believe this conclusion harmonizes with the California Supreme Court's consideration of standing in a somewhat related context involving continuous stock

---

[12] Examples include *La. Mun. Police Emples. Ret. Sys. v. Wynn* (9th Cir. 2016) 829 F.3d 1048, 1058 (applying Nevada law), *In re Regions Morgan Keegan Sec. v. Morgan Asset Mgmt., Inc.* (W.D. Tenn. 2010) 694 F.Supp.2d 879, 884 (applying Maryland law), *In re Abbott Depakote S'holder Derivative Litig.* (N.D. Ill. 2013) 2013 U.S. Dist. Lexis 78841, at page 21, footnote 7 (applying Illinois law), and *Staehr v. Western Capital Res., Inc.* (D. Minn. 2011) 2011 U.S. Dist. Lexis 72793, at *5 (applying Minnesota law).

ownership in a derivative action. The high court considered whether the plaintiff in a derivative suit had standing to continue litigating the action after involuntarily losing his stock in the nominal defendant corporation due to a merger. (*Grosset*, *supra*, 42 Cal.4th at p. 1104.) The court observed that while the language of section 800, subdivision (b) "d[id] not clearly impose" a continuous ownership requirement, there were "other considerations" that supported or even compelled an interpretation of the statute to require continuous ownership. (*Grosset*, *supra*, at p. 1114.) These included "the statutory purpose to minimize abuse of the derivative suit" and "the basic legal principles pertaining to corporations and shareholder litigation." (*Ibid.*) The court reiterated that the authority to pursue a claim on a corporation's behalf rests with the board of directors. (*Ibid.*) A stockholder can seek to enforce the corporation's rights in a derivative suit, but "[t]he fact remains that a derivative claim belongs to the corporation, not to the plaintiff asserting the claim on the corporation's behalf." (*Id.* at p. 1118.) The court concluded that because the plaintiff no longer owned stock in the corporation, he did not have standing to continue litigating the derivative action. (*Id.* at p. 1119.)

We similarly find that although the pleading requirement imposed by section 800(b)(2) does not address the precise circumstances arising here, it constrains the derivative mechanism to those occasions in which the board, properly presented with a demand, either refuses to act or would be disabled from acting due to majority interest or lack of independence. For the mechanism to function, derivative claims not already validly in litigation should be subject to the same requirement at the time they are filed.

> b. *The Demand Requirement Must Be Reassessed if* (1) *the Derivative Claims Were Not Validly in Litigation*, *and* (2) *Changes to the Board Affect the Alleged Futility of Demand as to Those Claims*

We need look no further than the circumstances of this case for a suitable example of how *Braddock*'s reasoning applies under California law.

As discussed earlier, the superior court sustained petitioners' demurrers to the initial complaint and amended complaint, finding as to each that plaintiffs had failed to

24

adequately allege demand futility, and granted leave to amend. The court further noted that it was overruling the demurrer to the amended complaint on the ground of failure to state a cause of action. Plaintiffs contend based on this latter ruling that their derivative claims were validly in litigation when they filed the operative complaint. They argue that procedural differences between a sustained demurrer with leave to amend under California law, and the grant of a motion to dismiss under Delaware law, negate any application of *Braddock* here, and that *Braddock* applies only where there is a new and independent board in place that can consider a demand. These arguments are unavailing.

Contrary to plaintiffs' assertion that the superior court found plaintiffs' amended complaint had adequately pled causes of action for breach of fiduciary duty and unjust enrichment, the court stated only that it was overruling the demurrer on that ground, which was "entirely unsupported" by any argument in petitioners' papers. The effect of this ruling, according to the superior court, was to disqualify petitioners' later effort to demur to those two causes of action for failure to state a claim in the operative complaint;[13] it did not transform the derivative claims, which were declared infirm for failing to comply with the statutory precondition to make demand or sufficiently allege the futility of doing so, to be "validly in litigation." Because plaintiffs failed to satisfy the legal test for demand excusal, and the superior court sustained the demurrer to the amended complaint as to both causes of action on that ground, the derivative claims were not "validly in litigation" when plaintiffs filed the operative complaint. (See *Braddock*, *supra*, 906 A.2d at p. 786.)

---

[13] The superior court on this issue explained that "[a] party may not demur to an amended complaint on grounds that could have been raised by demurrer to an earlier version of the complaint. (Code Civ. Proc., § 430.41, subd. (b).)" The court noted that it had overruled the prior demurrer to plaintiffs' claims for breach of fiduciary duty and indemnification because it was " 'entirely unsupported by any argument in [petitioners'] papers.' "

25

Nor does the operation of California procedural law preclude application of the reasoning in *Braddock*. Plaintiffs point out that the sustaining of a demurrer with leave to amend does not result in dismissal of the complaint. Nothing in *Braddock* suggests, however, that its application is limited to circumstances in which a complaint has been dismissed without leave to amend.[14] The determinative issue is the legal effect of the demurrer order prior to the filing of an amended complaint—specifically whether "[i]t constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal." (*Braddock*, *supra*, 906 A.2d at p. 786.) The order sustaining petitioners' demurrer to the amended complaint, with leave to amend, constituted a judicial determination that the amended complaint did not meet the legal requirements for demand excusal set forth in section 800(b)(2). Consequently, for purposes of assessing demand futility upon the filing of an amended complaint, "even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged" in the prior complaint, the proper inquiry is "by reference to the board in place at the time when the amended complaint" was filed. (*Braddock*, *supra*, at p. 786.)

Plaintiffs also seek to limit *Braddock* factually, based on the degree of board turnover between filings of the initial and amended complaints. They contend that *Braddock* only applies when there is the equivalent of "a new independent board of directors" to consider a demand. (*Braddock*, *supra*, 906 A.2d at p. 786.)

---

[14] Plaintiffs incorrectly assert that *Braddock* was premised upon a dismissal of the complaint without leave to amend. In fact, the Court of Chancery dismissed the first amended complaint without prejudice for failure to comply with the demand requirement. (*Braddock*, *supra*, 906 A.2d at pp. 779, 782.) The *Braddock* court addressed some confusion about the finality of the dismissal order, due in part to a then-recent change to the Delaware Court of Chancery procedural rules, and noted that while the dismissal without prejudice failed to expressly authorize an amended filing by a certain date, the order "must be construed as if it had expressly granted" the plaintiff leave to file an amended complaint. (*Id*. at p. 783.)

26

We do not interpret *Braddock* so narrowly. Although changes to the board of directors in *Braddock* rendered a "seven-member majority of new directors" at the time the plaintiff filed the amended complaint (*Braddock*, *supra*, 906 A.2d at p. 779), the relevant holding was not tied to a threshold change in board composition. Rather, the rationale behind the rule in *Braddock* was to enable the board in place at the time of the filing of an amended complaint to exercise its authority over the affairs of the corporation by reviewing the derivative claims not yet "validly in litigation." (*Id*. at p. 786.)

Plaintiffs cite several cases in support of the proposition that *Braddock* applies only when a majority of the board has changed. Two of these cases predate *Braddock* but are nonetheless consistent with its holding; in both, the court analyzed the demand pleading with respect to the earlier-composed board because the amended complaint did not raise any derivative claims that were not already validly in litigation. (See *Cal. Public Emples. Ret. Sys. v. Coulter* (Del. Ch. 2002) 2002 Del. Ch. Lexis 144; *In re Fuqua Indus. Shareholder Litig.*, *supra*, 1997 Del. Ch. Lexis 72.) The third case, *Cambridge Ret. Sys. v. Bosnjak* (Del. Ch. 2014) 2014 Del. Ch. Lexis 107, postdates *Braddock* but is wholly inapposite because it involved a challenge to the originally-filed complaint. The court applied a straightforward demand excusal analysis under *Aronson* and had no reason to mention or consider *Braddock*. (*Id*. at *3-*4.)

As this case demonstrates, a lesser change in board composition can alter the analysis.[15] The superior court found the demand futility allegations adequate as to five of

---

[15] We also note that various courts have applied *Braddock* irrespective of the extent of change in the board's composition. (See, e.g., *Zoumboulakis v. McGinn* (N.D.Cal. 2015) 148 F.Supp.3d 920, 926 [four new directors out of nine]; *In re Maxim Integrated Products, Inc., Deriv. Lit.* (N.D.Cal. 2008) 574 F.Supp.2d 1046, 1059 [one new director out of five]; *Johnston v. Box* (Mass. 2009) 903 N.E.2d 1115, 1126-1127 [allowing amendment to the complaint would be futile because the board "as presently constituted is now independent and disinterested"]; see also *La. Mun. Police Emples. Ret. Sys. v. Wynn*, *supra*, 829 F.3d at p. 1055 [listing the eight directors in place when the amended complaint was filed]; *id*. at p. 1058 [which under *Braddock* constitute the "relevant board"].)

27

Apple's eight directors who comprised the 2014 Board: defendants Campbell, Cook, Levinson, and Drexler, and non-defendant Iger. Even assuming the court's conclusion was correct as to those individuals, the turnover of two of the directors (defendants Campbell and Drexler) potentially undermined plaintiffs' demand excusal claim, leaving only three of eight directors (Cook, Levinson, and Iger) who were ostensibly unable to consider a demand as of the filing of the operative complaint.

In sum, we conclude that the reasoning of *Braddock* is consistent with the governing and limiting principles of California law on derivative actions. Where, as here, an amended complaint alleges derivative claims that were previously deemed legally insufficient, the demand requirement must be assessed in relation to the board of directors in place when the amended complaint is filed.

### 3. The Superior Court Erred in Assessing Demand Futility with Respect to the 2014 Board

Our conclusion that the reasoning in *Braddock* applies here, where an amended complaint alleges derivative claims that were not already validly in litigation, compels us to find that the superior court erred in overruling the demurrer to the operative complaint. The court should have analyzed plaintiffs' demand futility allegations with respect to the board of directors in place when the operative complaint was filed in April 2016. To the extent the court analyzed demand futility with respect to the 2014 Board, the court failed to enforce the demand requirement under the circumstances presented. We further find that the operative complaint does not excuse demand on Apple's board of directors as it existed when the operative complaint was filed (hereafter "the 2016 Board").

As the superior court noted in its order, plaintiffs' direct allegations of demand futility extend to defendants Campbell, Cook, and Levinson, based on evidence that they knew of and consented to or acted upon the non-recruitment policies. Assuming without deciding that the allegations are adequate to establish demand futility as to these three

28

individuals,[16] only Cook and Levinson remained on the 2016 Board. The six other directors serving on the 2016 Board are non-defendants Iger, Gore, Jung, Sugar, Wagner, and Bell. To plead demand futility, plaintiffs must allege that at least two of these six directors (in addition to Cook and Levinson) would not be able to render a disinterested and independent decision on a demand made in April 2016. Plaintiffs acknowledge in their return in opposition to the writ petition, however, that they have not alleged demand futility as to Sugar, Wagner, and Bell, leaving Iger, Gore, and Jung as the only remaining candidates at this juncture. The pertinent question thus becomes whether the operative complaint sufficiently alleges demand futility as to directors Iger, Gore, and/or Jung.

Petitioners maintain that plaintiffs cannot allege demand excusal with respect to these directors and instead resort to generalized allegations that are insufficient as a matter of law. They contend that the superior court improperly relied on generalized allegations to infer futility as to a majority of the Apple board, flouting the requirement that a plaintiff establish demand futility through particularized allegations on a director-by-director basis. Petitioners also challenge the notion that general knowledge of Apple's non-solicitation practices—if such knowledge could be attributed to Iger, Gore, and/or Jung—renders the director incapable of fairly evaluating claims related to those practices. They argue that while non-solicitation agreements between companies may implicate antitrust issues, knowledge of a unilateral policy by Apple to refrain from cold-calling (e.g., Apple's "Hands Off (Do Not Call)" list) invokes no antitrust concerns.

Plaintiffs respond that the allegations of the operative complaint are sufficient to establish demand futility as to a majority of the 2016 Board, including Iger, Gore, and Jung. They argue that since knowledge can be established by circumstantial evidence, they only need to plead facts sufficient to support an inference of reasonable doubt that

---

[16] Petitioners argue vigorously that the superior court did not properly analyze plaintiffs' allegations regarding directors Levinson and Cook. We recognize that petitioners do not concede demand futility as to these or any of the board members serving in April 2016.

29

the director in question can act impartially, citing *Sandys v. Pincus* (Del. 2016) 152 A.3d 124 (*Sandys*). They further argue that knowledge on the part of certain directors can support an inference as to the other directors, citing *Saito v. McCall* (Del. Ch. 2004) 2004 Del. Ch. Lexis 205 (*Saito*), overruled on other grounds by *Lambrecht v. O'Neal* (Del. 2010) 3 A.3d 277, 293. Plaintiffs contend on this basis that it was reasonable for the superior court to draw inferences from particularized facts about certain board members' knowledge of and complicity in the anti-recruitment agreements.

Plaintiffs are correct that knowledge may be established by circumstantial evidence (see *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 787) and may depend on courts drawing logical and reasonable inferences (see Evid. Code, § 600, subd. (b); *Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1078). But this general precept does not displace statutory law that requires the particularized pleading of demand futility. "[G]iven the requirement under section 800(b)(2) that allegations be made 'with particularity,' it is clear that general averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice . . . . [Citation.] . . . Rather, 'the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.' [Citation.] Thus, the court, in reviewing the allegations to support demand futility, must be able to determine on a director-by-director basis whether . . . each possesses independence or disinterest such that he or she may fairly evaluate the challenged transaction." (*Bader*, *supra*, 179 Cal.App.4th at p. 790.)

Where, as here, the derivative claim stems from conduct that did not involve a decision of the board, the *Rales* test applies. Plaintiffs were "required to allege facts 'with particularity' (§ 800(b)(2)) sufficient to 'create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.' "

30

(*Bader*, *supra*, 179 Cal.App.4th at p. 797.)  Broad or conclusory allegations are insufficient (*Shields*, *supra*, 15 Cal.App.4th at p. 1621), as are "facts relating to the structural bias common to corporate boards . . . ." (*Oakland Raiders*, *supra*, 93 Cal.App.4th at p. 587.)  Hence, "the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." (*Shields*, *supra*, at p. 1622; see also *Rales*, *supra*, 634 A.2d at pp. 935-936 [whether the board can impartially consider a demand depends on the members' ability to act independently and free of personal interest in light of the allegations confronting them].)

"A director will be deemed not to be disinterested if the facts alleged 'demonstrat[e] a potential personal benefit or detriment to the director as a result of the decision.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 792; see also *Rales*, *supra*, 634 A.2d at p. 936.)  Lack of independence means that a director is susceptible to " 'extraneous considerations or influences' " rather than the " 'corporate merits of the subject before the board.' " (*Bader*, *supra*, at p. 792.)  It is not enough to claim that "directors lack independence because they are dominated by" or were " ' "personally selected" ' " by a controlling shareholder. (*Ibid.*)  Rather, "the plaintiff is required to present specific facts showing 'that through personal or other relationships the directors are beholden to the controlling person.' " (*Ibid.*, quoting *Aronson*, *supra*, 473 A.2d at p. 815.)  Because the " 'threat of personal liability for approving a questioned transaction' by itself is insufficient to refute the disinterestedness or independence of a director" (*Bader*, *supra*, at p. 792), " '[a] plaintiff may not "bootstrap allegations of futility" by pleading merely that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves." [Citation.]' (*In re Sagent Technology*, *Inc.*, *Derivative Litig.* (N.D.Cal. 2003) 278 F.Supp.2d 1079, 1089.)" (*Id.* at pp. 792-793.)

We independently review the sufficiency of the demand futility pleading. (*Bader*, *supra*, 179 Cal.App.4th at p. 786.)  Plaintiffs' allegations focus substantially on the

31

threatening force that Apple co-founder and CEO Steve Jobs exerted in negotiating and enforcing non-solicitation agreements with heads of companies, including many that appeared on Apple's "Hands Off" list and his " 'tight control' " over the Apple directors and outspoken belief that companies in business relationships should not hire each other's technical people. Plaintiffs claim that particularized allegations showing that defendants Campbell, Levinson, and Schmidt knew about Apple's policies and practices, combined with Jobs' aggressive backing of the policies and sway over board members, are sufficient to establish knowledge on the part of the entire Apple board.

Plaintiffs further rely on allegations of the directors' close personal and business ties with Jobs, particularly as to Cook, Levinson, and Iger, who became Disney's CEO in 2005 and formed a relationship with Jobs around that time, when he approached Jobs (who was then Pixar's CEO) about a Disney/Pixar acquisition. Plaintiffs allege that Iger and Jobs maintained a close personal relationship thereafter, evidenced by Iger's willingness to keep secret Jobs' recurrence of cancer in 2006 despite his fiduciary duty to Disney to disclose matters material to Disney's Pixar acquisition. Plaintiffs contend that these allegations support the inference that the board knew about the anticompetitive policies and suggest the directors "could not be impartial in deciding to bring a lawsuit which would tarnish" Jobs's legacy.

Plaintiffs also assert that the directors' direct supervision of recruiting and compensation at Apple supports the inference that they were not disinterested and knew of the anticompetitive practices. The operative complaint alleges that the compensation committee, which included directors Levinson, Gore, and later Jung, was responsible for overseeing the development of compensation programs for all employees and for approving the overall salary budget and merit increase budget. The committee "regularly discussed the need to attract and retain employees and evaluated the competitiveness of Apple's compensation practices in comparison to peer technology companies," including in correspondence with Apple's vice-president for human resources and with the help of

an outside consultant retained in 2004 to conduct a compensation program market study. Plaintiffs refer to SEC filings quoted in the operative complaint and signed by several defendants and director Gore, which acknowledged Apple's need to attract and retain skilled personnel and cited the intense competition for personnel in the information technology industry. Plaintiffs also refer to proxy statements in which the directors solicited stockholder approval of stock-based compensation programs to increase competitiveness and allegedly made misleading statements about employee retention practices and competition.

We find these allegations, viewed in their context and in light of the complaint as a whole (*Bader*, *supra*, 179 Cal.App.4th at p. 786), insufficient to support an inference of lack of disinterest or independence, at least as to directors Gore and Jung. The allegations regarding Gore and Jung do not extend beyond each of their general roles as a director and member of the compensation committee. The facts alleged about the committee's activities are unremarkable (e.g., overseeing compensation programs, approving salary and merit increase budgets, soliciting market research on Apple's competitiveness in compensation programs, and seeking shareholder approval for increasing employee stock-based compensation) and do not suggest the committee was informed—either directly or indirectly—of the agreements.

For example, the allegations that plaintiffs claim support an inference that Gore "knew or was reckless in not knowing about the anticompetitive agreements and practices at Apple" include Gore's attendance at meetings in which recruiting and retention issues were discussed, e-mail correspondence in which Apple's vice-president for human resources informed the committee about the competitiveness of Apple's compensation and benefits programs and requested consent " 'to increase our annual grant pool . . . ,' " and Gore's presence at the May 2006 board meeting when Jobs informed the board of

33

what the complaint calls the "Apple/Pixar (Disney) Agreement."[17]  Without more, neither the general activities of the compensation committee, nor the detailed allegations regarding an Apple/Pixar agreement or Disney's 2006 acquisition of Pixar, support an inference that Gore knew of, let alone participated—as plaintiffs claim—in the alleged conspiracy.  The same is true for director Jung, who plaintiffs simply allege "was also on the Compensation Committee in 2008."

We also are not persuaded that knowledge of Apple's non-solicitation practices and allegedly anticompetitive agreements with other companies can be imputed to Gore and Jung, for purposes of establishing demand futility, merely because they served on the board or the compensation committee alongside directors who are the subject of more direct allegations.  Plaintiffs' reliance on a footnote in an unpublished Court of Chancery case for this proposition is unavailing.  (See *Saito*, *supra*, 2004 Del. Ch. Lexis 205, at *33, fn. 68 [inferring that several directors' awareness of accounting irregularities "was communicated to other" board members in connection with a merger].)  Whereas here, the allegations pertaining to the compensation committee suggest standard activities to oversee and adjust Apple's compensation practices in a highly competitive industry, the allegations in *Saito* indicated that accounting practices amounting to "at least a $40 to $55 million problem" were discussed by the audit committee in the midst of merger negotiations and were conveyed to the board of the merger partner, which nonetheless failed to react.  (*Id*. at *34.)  In the absence of any facts to suggest the compensation committee was informed of Apple's non-solicitation practices affecting recruitment and hiring, there is no basis to infer knowledge on the part of Gore or Jung.

_____

[17] Quoting from the meeting minutes, the operative complaint states that Jobs informed the entire board, including director Gore, " 'on the status of the acquisition of Pixar by Disney and any potential impact on [Apple]'s relationship with Disney.  Mr. Jobs indicated that the acquisition had closed effective as of May 5, 2006 and that he had joined Disney's board of directors.' "  The allegations that follow include that Pixar "appeared" on Apple's "Hands Off (Do Not Call List)" in July 2009, and suggest that an Apple/Pixar non-solicitation agreement was in effect several years prior.

34

To be clear, our conclusion regarding Gore and Jung is based on the absence of any particularized factual allegations to support an inference of even general knowledge about the purportedly anticompetitive agreements with other companies, let alone knowledge or involvement sufficient to disable them from fairly considering plaintiffs' claims. This is particularly true where Gore and Jung held no "overlapping" board positions with companies listed on Apple's "Hands Off" list, are not alleged to have had close personal or business relationships with individuals directly implicated by plaintiffs' allegations, and are not alleged to lack independence or to suffer " 'a substantial likelihood' " of liability in connection with the anticompetitive conduct.[18] (See *Bader*, *supra*, 179 Cal.App.4th at p. 798; see also *Rales*, *supra*, 634 A.2d at p. 936.)

This context-specific conclusion should not be interpreted too broadly in light of petitioners' contentions regarding the superior court's use of inference. Courts evaluating demand futility at the pleading stage can draw reasonable inferences as to director interest *when adequately founded on particularized allegations*. (See *Brehm v. Eisner*, *supra*, 746 A.2d at p. 255 ["[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences"]; *Sandys*, *supra*, 152 A.3d at p. 128 [while the plaintiff " 'is bound to plead particularized facts in pleading a derivative complaint,' " the court assessing the sufficiency of the derivative complaint is " 'bound to draw all inferences from those particularized facts in favor of the plaintiff, not the defendant' "]; see also *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730,

---

[18] We note that despite the superior court's order stating generally that direct allegations of knowledge on the part of certain board members supported an inference as to "the entire board," the court's order did not specifically reference Gore (in contrast with its footnote conclusions as to Drexler and Iger). Further, the court indicated at the demurrer hearing that it was "really not persuaded" of the adequacy of the demand futility allegations with respect to Gore.

747 [noting the "ordinary standards of demurrer review still apply" upon writ review of an order overruling a demurrer].)

Thus, particularized allegations of pervasive and continued corporate misconduct can support an inference of board knowledge and intentional disregard for purposes of assessing demand futility, particularly where the conduct relates to a product or policy "critical to a company's success" or "of special importance to it." (*Rosenbloom v. Pyott* (9th Cir. 2014) 765 F.3d 1137, 1154.) The Ninth Circuit Court of Appeals, interpreting Delaware case law, recently reaffirmed this principle in *Rosenbloom*, which the superior court cited as support for its conclusion that direct allegations regarding knowledge of Apple's non-recruitment practices and agreements on the part of a few directors supports a pleading stage inference that the other board members "knew of and condoned" the agreements. But whereas "a battery of particularized factual allegations" in *Rosenbloom* suggested that the board of the nominal defendant pharmaceutical company approved a strategic plan premised on the unlawful promotion of off-label sales of the drug Botox and closely monitored the increase in off-label sales over a period of years (*id*. at p. 1152), plaintiffs' allegations in this case do not support an inference of either centralized action or conscious inaction on the part of the Apple board. At most, we concur with the superior court's inclination that particularized allegations regarding director Iger—based on his relationship with Jobs and on the testimony of Apple's vice president for human resources, which suggested the timing of Apple's non-solicitation agreement with Pixar was linked with Disney's acquisition of Pixar and Jobs's " 'coming on the board at Disney' "—supported a "reasonable inference" that Iger "knew of the non-solicitation agreements" and consented to the practice as CEO and board member of the parent company of Pixar.

Since the operative complaint does not allege that demand would have been futile as to directors Sugar, Wagner, and Bell, and we have found the allegations insufficient to disqualify directors Gore and Jung from fairly exercising " 'independent and disinterested

36

business judgment in responding to a demand' " (*Bader*, *supra*, 179 Cal.App.4th at p. 797), we conclude that plaintiffs have failed to adequately plead excuse from the demand requirement (§ 800(b)(2)) as to a majority of Apple's eight-member board of directors. Consequently, petitioners' demurrer to the operative complaint must be sustained.

### 4. *Leave to Amend*

In considering whether the demurrer should be sustained without leave to amend, we observe on the one hand that plaintiffs have not proposed how they would amend the operative complaint if the pleading is deemed inadequate with respect to the 2016 Board. It is generally the plaintiff's burden to " 'show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; see also *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 971.)

We cannot conclude on the record before us, however, that there is no reasonable possibility that plaintiffs can allege demand futility as to the required number of Apple board members. (Q*uelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39 [leave to amend must be granted where "there is a reasonable possibility that the defect can be cured by amendment"].) Given the procedural posture of the case and the superior court's early indication that it would assess demand futility as of the time the original derivative actions were filed, plaintiffs were never directed to the correct point of reference for their pleading.

We take guidance on this point from our Supreme Court, which has explained that while "[d]enial of leave to amend is not unusual following writ review of an overruled demurrer, . . . [citations] . . . , leave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.] If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of

37

fairness, unless the complaint shows on its face that it is incapable of amendment." (*City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 747.)  Because the operative complaint "does not on its face foreclose any reasonable possibility of amendment," we will direct the superior court to grant plaintiffs leave to amend, should they seek to do so. (*Ibid*.)

## IV.    DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of October 5, 2016, overruling petitioners' demurrer to the first and fifth causes of action of the second amended consolidated shareholder derivative complaint, and to enter a new order sustaining the demurrer as to those causes of action, with leave to amend.  The temporary stay order is vacated.  Costs in this original proceeding are awarded to petitioners.

_____
                                                    Premo, J.

WE CONCUR:

_____
        Elia, Acting P.J.

_____
        Grover, J.

Apple Inc. et al. v. Superior Court (Police Retirement System of St. Louis et al.)
H044133

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-14-CV262174 |
|---|---|
| Trial Judge: | Hon. Peter H. Kirwan |
| Counsel for Petitioners:<br>Apple Inc.<br>Timothy D. Cook<br>Millard Drexler<br>Arthur D. Levinson | O'Melveny & Myers<br>Seth A. Aronson<br>Michael F. Tubach<br><br>Sidley Austin<br>Norman J. Blears |
| Counsel Respondent:<br>Superior Court of Santa Clara County | None on record |
| Counsel for Real Parties in Interest:<br>The Police Retirement System of<br>St. Louis<br>John F. Krawczyk<br>John Barto | Robbins Arroyo<br>Brian J. Robbins<br>Kevin A. Seely<br>Gina Stassi<br>Michael J. Nicoud<br><br>Cotchett, Pitre & McCarthy<br>Joseph W. Cotchett<br>Nancy L. Fineman<br>Mark C. Molumphy<br>Camilo Artiga-Purcell |

Apple Inc. et al. v. Superior Court (Police Retirement System of St. Louis et al.)
H044133